584 S.E.2d 548

**STATE of West Virginia ex rel. Norman W. SILVER and Deborah A. Silver, Petitioners,**

v.

**Honorable Christopher C. WILKES, Judge of the Circuit Court of Berkeley County, Respondent.**

No. 31006.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 11, 2003.

Decided June 27, 2003.

Robert C. Stone, Jr., Esq., Martinsburg, for the Silvers.

Cynthia A. Gaither, Esq., Guardian ad Litem, Cinda L. Scales, Esq., Martinsburg, for Clyde O. F., Jr.

MAYNARD, Justice.

In this original jurisdiction action, we are asked to determine whether circuit courts have authority to issue writs of prohibition and writs of mandamus against family court judges. The Circuit Court of Berkeley County determined that family courts are not inferior to circuit courts and, therefore, circuit courts have no jurisdiction to entertain original jurisdiction petitions filed against family court judges. We respectfully disagree and grant the writ as requested.

## I.

### FACTS

Three children were born to Deborah P. during the time that she has been married to Lucky P. Ashley Cassandra P. was born on August 1, 1996; Austin Cole P. was born on July 3, 1997; and Melissa Angelica P. was born on June 15, 1999. The youngest child, Melissa, is the subject of this petition. Ms. P. has been in the past incarcerated at various times for forgery and uttering. She is currently enrolled in a Teen Challenge drug rehabilitation program [1] attempting to overcome her addiction to crack cocaine. Mr. P. is currently incarcerated, although we have been given no details regarding the reason(s) or the length of his incarceration. Ms. P. gave temporary custody of the three children to her parents, Norman W. Silver and Deborah A. Silver.

Clyde F., Jr. is married to Deborah P.'s half-sister, Kimberly F., also known as Kim F. On March 13, 2002, at a hearing before the family court judge, Mr. F.'s attorney advised the court that Ms. P. approached Mr. F. some time after Melissa was born to tell him that he was Melissa's father. Ms. P. requested money, purportedly to support her drug habit, and told Mr. F. if he refused, she would tell Kim. He did not give her any money, and she did indeed tell Kim. Mr. F.'s attorney stated that Mr. F. did not request paternity testing at that time because he believed another individual who was also involved with Ms. P. had been determined by DNA testing to be Melissa's father. During the hearing, Ms. P. admitted she was in a relationship with Mr. R. at the time Melissa was conceived but paternity testing proved he was not Melissa's father.

On September 7, 2001, Mr. F. filed a petition requesting paternity testing. The Silvers moved to intervene in the proceedings. The court granted them intervenor status. Cynthia A. Gaither was appointed to serve as *guardian ad litem* for Melissa. After hearing testimony from all of the parties involved, including the objections of Ms. P. and the

---

1. The family court's July 26, 2002 order indicates that Ms. P.'s rehabilitation will take place in Philadelphia, Pennsylvania, followed by treatment in Michigan or Tennessee. The order states that if Ms. P. successfully completes the program and proves to the court that she is capable of caring for the children, custody will be returned to her.

Silvers, the family court judge entered an order on April 2, 2002 granting Mr. F.'s request for paternity testing. The court continued custodial responsibility of the children with the Silvers and granted Ms. P. visitation with the children.

The Silvers now contend that after the *guardian ad litem* filed her report, they discovered Ms. Gaither and Mr. F. once had an attorney-client relationship involving a domestic matter. On November 18, 2002, Ms. Gaither wrote a letter to the Silvers' attorney admitting that she represented Mr. F. "in a divorce proceeding in 1998 which was dismissed due to reconciliation." She stated that after she was appointed to serve as *guardian ad litem* for Melissa, she brought the matter to the court's attention. In her letter, she states that "the court felt that there was no conflict." In the report she filed with the family court as *guardian ad litem*, she recommended that paternity testing take place. The Silvers contend that Ms. Gaither should not have been appointed "without there first being a full-scale hearing with the Court and the parties[.]"

Following entry of the July 26, 2002 family court order which continued custody of the three children with the Silvers, Mr. F. filed a motion to reconsider the custody of Melissa. Paternity testing was completed and conclusively proved that Mr. F. is Melissa's father. The family court held a hearing on the motion on October 3, 2002. During the hearing, the Silvers argued that Mr. F. did not have standing to contest the custody of Melissa because he could not satisfy the two-prong test set forth in Syllabus Point 2 of *State ex rel. Jeanne U. v. Canady*, 210 W.Va. 88, 554 S.E.2d 121 (2001), which reads as follows:

> "A putative biological father must prove by clear and convincing evidence the following factors before he will have standing to raise the issue of paternity of a child born to a married woman who is not his wife: (1) that he has developed a parent-child relationship with the child in question, and (2) that the child will not be harmed by allowing the paternity action to proceed." Syl. Pt. 6, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 474 S.E.2d 554 (1996).

The Silvers also argued that Kim F. was angry at her sister for having an affair with her husband, and as a result, would harm the child. Mr. F. requested custody. The family court subsequently entered an order "find[ing] that the Final Order Regarding Custodial Responsibility . . . should be null and void with regard to Melissa P[.]" A final hearing was set for December 13, 2002. The Silvers filed a motion for a writ of prohibition in circuit court. The circuit court denied the writ by entering an order which states,

> The Court notes that this is a request to prohibit the exercise of jurisdiction of a Family Court Judge and that the Family Court is not an inferior court to Circuit Court therefore this Court is without jurisdiction to entertain this action, the proper for[u]m would be the West Virginia Supreme Court of Appeals.

The Silvers filed a petition for a writ of prohibition and mandamus in this Court requesting that the family court judge be prohibited from holding the December 13, 2002 hearing; that enforcement of the order wherein Mr. F. was determined to be the biological father of Melissa be prohibited; that the family court judge be prohibited from proceeding in any matter involving custody and decision-making responsibility of Melissa; and that the circuit court judge be compelled to conduct a hearing on the writ of prohibition filed in circuit court. Mr. F. filed a response requesting that the writ be denied and that the December 13, 2002 hearing proceed as scheduled. Mr. F. contends that the petition was filed as a delay tactic and that the *guardian ad litem* informed all of the parties involved that she previously represented him in a divorce action.

In his response, Mr. F. alleges that the Silvers did not object to the appointment of the *guardian ad litem* until she began investigating child abuse allegations against Mr. Silver made by his children. Mr. F. attached two affidavits to his response wherein Michael Silver and Kim F. swear that their father physically abused them while they were growing up. Specifically, Michael Silver contends that his "father cut a garden hose and whipped me to the point that I was cut deeply enough to bleed through the

marks the hose made on my body." He alleges that his father tied him to a tree and beat him "on a regular basis." He says that on several occasions, the injuries caused by the physical abuse were so severe that he was unable to attend school. He believes that any child left in Norman Silver's care is in danger of being physically abused. Kim F. contends that she was physically abused to the point that the court removed her from the home of Norman Silver when she was sixteen years old. She further contends that Deborah Silver was present when the abuse took place and did nothing to protect her.

Ms. Gaither filed a response stating that upon being appointed *guardian ad litem*, she contacted both the family law master[2] and Mr. F.'s attorney to inform them that she had previously represented Mr. F. in a legal matter. She relates that the family law master did not believe a conflict existed, and that neither Mr. F.'s attorney nor the Silvers objected to the appointment. She states that the Silvers filed the petition for writ of prohibition after she asked them to "sign a release to allow me to investigate alleged child abuse charges towards them." She simply requests that this Court issue a writ "as it seems fit." On December 10, 2002, this Court stayed the October 18, 2002 order of the family court which determined that Mr. F. is Melissa's father and issued a rule to show cause against Judge Wilkes "commanding and directing the said respondent to show cause, if any he can, why a writ of mandamus should not be awarded against [him.]"

## II.

## DISCUSSION

When we set aside the facts and myriad accusations presented in this case, the simple question we are left with is whether circuit courts have original jurisdiction to entertain petitions for writs of prohibition and writs of mandamus filed against family court judges. If we determine that such jurisdiction rests with circuit courts, then we must grant a writ of mandamus against Judge Wilkes directing him to hold a hearing on the writ of prohibition which was filed by the Silvers in his court. The standard for granting a writ of mandamus is stated as follows:

> "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syllabus Point 10, *State ex rel. Marockie v. Wagoner*, 191 W.Va. 458, 446 S.E.2d 680 (1994).

Pursuant to Chapter 51 Article 2A of the West Virginia Code, titled "Family Courts," our current family court system became operable on January 1, 2002. W.Va.Code 51–2A–23 (2001).[3] Unlike appeals from family court orders, the Family Court statutes are silent regarding which court has original jurisdiction over family court judges. The statutes specifically provide that petitions for appeal must be filed in circuit court, W.Va. Code § 51–2A–11(a) (2001), unless "both of the parties file . . . a notice of intent to file an appeal from the final order of the family court directly to the supreme court of appeals and to waive their right to file a petition for appeal with the circuit court[.]" W.Va.Code § 51–2A–15(a) (2001). Also, if a stay of proceedings is sought by a party pending an appeal and the request is denied by a family court judge, the party may file a motion for a stay of proceedings in circuit court. W.Va.Code § 51–2A–12(b) (2001).

---

2. Following the creation of a family court system by the West Virginia Legislature in 2001, family law masters became known as family court judges.

3. Article VIII, Section 16 of the West Virginia Constitution states in pertinent part:

There is hereby created under the general supervisory control of the supreme court of appeals a unified family court system in the state of West Virginia to rule on family law and related matters. Family courts shall have original jurisdiction in the areas of family law and related matters as may hereafter be established by law. Family courts may also have such further jurisdiction as established by law.

Original jurisdiction need not be included in the Family Court statutes because the topic is covered elsewhere.

The Constitution of West Virginia provides that:

> Circuit courts shall have control of all proceedings before magistrate courts by mandamus, prohibition and certiorari.

> Circuit courts shall have original and general jurisdiction of all civil cases at law where the value or amount in controversy, exclusive of interest and costs, exceeds one hundred dollars unless such value or amount is increased by the legislature; of all civil cases in equity; of proceedings in habeas corpus, mandamus, quo warranto, prohibition and certiorari; and of all crimes and misdemeanors.

W.Va. Const. art. VIII, § 6, in part. W.Va. Code § 51–2–2 (1978) similarly states:

> The circuit court shall have supervision and control of all proceedings before magistrates, by mandamus, prohibition and certiorari. They shall, except in cases confined exclusively by the Constitution to some other tribunal, have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds three hundred dollars; of all cases of habeas corpus, mandamus, quo warranto and prohibition[.]

Important to this case, the constitution and the statute both state that circuit courts have original jurisdiction of all cases of prohibition. The circuit judge reasoned that family courts are not inferior to circuit courts and circuit courts, therefore, have no jurisdiction to entertain original jurisdiction actions in prohibition and mandamus filed against family courts.

■ The Family Court statutes describe our system of family courts in the following manner:

> A family court is a court of limited jurisdiction. A family court is a court of record only for the purpose of exercising jurisdiction in the matters for which the jurisdiction of the family court is specifically authorized in this section and in chapter forty-eight [§§ 48–1–101 et seq.] of this code. A family court may not ex-ercise the powers given courts of record in section one [§ 51–5–1], article five, chapter fifty-one of this code or exercise any other powers provided for courts of record in this code unless specifically authorized by the Legislature. A family court judge is not a "judge of any court of record" or a "judge of a court of record" as the terms are defined and used in article [§§ 51–9–1 et seq.] nine of this chapter.

W.Va.Code § 51–2A–2(d) (2001). Limited jurisdiction is defined as "[j]urisdiction that is confined to a particular type of case or that may be exercised only under statutory limits and prescriptions." Black's Law Dictionary 856 (7th ed.1999). This is in contrast to the broad jurisdiction exercised by circuit courts. Circuit courts are courts of general jurisdiction and have power to determine all controversies that can possibly be made the subject of civil actions. See 20 Am.Jur.2d Courts § 68 (1995) ("A court of general jurisdiction has power to determine all controversies that can possibly be made the subject of civil actions.").

■ In light of the foregoing, we believe that family courts are inferior to circuit courts, and, accordingly, so hold. As is demonstrated above, circuit courts derive their original jurisdiction from both the Constitution of West Virginia and from the Legislature. Moreover, the Legislature specifically granted circuit courts appellate jurisdiction over family courts. Also, circuit courts have authority to stay family court orders pending appeal to circuit court. If family courts were not inferior to circuit courts, then all appeals and motions for stay of proceedings would necessarily be directed to this Court. It is not logical that the Legislature would give circuit courts appellant jurisdiction over family courts, which the Legislature clearly did, and then abrogate the circuit court's plain authority to consider petitions for writs of prohibition and mandamus. We, therefore, hold that pursuant to Article VIII, Sections 6 and 16 of the West Virginia Constitution, W.Va.Code § 51–2–2 (1978), and the Family Court statutes, W.Va.Code §§ 51–2A–1 to 23 (2001), family courts are courts of limited jurisdiction and are inferior to circuit courts.

Family courts are, therefore, subject to both the appellate jurisdiction and the original jurisdiction of the circuit courts in this State.

■ At the same time, we recognize that the original jurisdiction exercised by circuit courts is concurrent with the original jurisdiction exercised by this Court. This Court's original jurisdiction is constitutional. Article VIII, Section 3 of the West Virginia Constitution states, in part, "The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari." In our recent opinion, *State ex rel. Laura R. v. Jackson*, 213 W.Va. 364, 582 S.E.2d 811, 814 (2003), we recognized this Court's original jurisdiction over family court matters by stating, "This Court has original jurisdiction in prohibition [and mandamus] proceedings pursuant to Art. VIII, Sec. 3, of The Constitution of West Virginia." In *Laura R.*, we granted the petitioner relief in prohibition and remanded the case to the family court judge for entry of an order and further proceedings.

■ Where circuit courts have concurrent original jurisdiction with the West Virginia Supreme Court of Appeals over matters arising in family court, the preferred court of first resort is the circuit court. Only after a party seeks and fails to receive relief from a family court order in circuit court may that party then petition this Court for relief. In the case before us, the Silvers have no other adequate remedy. There is no final order to appeal. We cannot tell from the exhibits attached to the petition if it is in Melissa's best interest to know who her biological father is when her mother's husband has been presumed to be her father up to this point. If the order finding Mr. F. to be her father is enforced, we do not know if custody should be awarded to him when one takes into consideration the circumstances under which Melissa was born. The circuit court must hold a hearing in order to determine if a writ of prohibition should issue against the family court judge which would preclude the enforcement of the order wherein Mr. F. was determined to be the biological father of Melissa and the custody of Melissa with the Silvers was nullified.

It has been brought to our attention in this case and we are deeply concerned about the *guardian ad litem's* past legal relationship with Mr. F. The family court judge must determine whether or not a different attorney should be appointed to represent Melissa in future proceedings. Given the allegations which have surfaced during the pendency of this action by the adult individuals involved in these childrens' lives, we urge the family court and the circuit court to find a safe haven for these children.

## III.

### CONCLUSION

For the foregoing reasons, the writ of mandamus prayed for by the Silvers is granted. The Circuit Court of Berkeley County is directed to hold a hearing on the petition for writ of prohibition which was filed by the Silvers in an effort to enjoin the family court judge from enforcing the paternity and custody orders.

Writ granted.