659 S.E.2d 331

**Barbara Conley DEITZ, Petitioner Below, Appellant,**

v.

**Billy Harrah DEITZ, Respondent Below, Appellee.**

**No. 33446.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 2008.

Decided Feb. 14, 2008.

James Wilson Douglas, James Wilson Douglas, L.C., Sutton, WV, for Appellant.

Billy Harrah Deitz, Glenville, WV, pro se.

PER CURIAM.

The appellant herein and petitioner below, Barbara Conley Deitz (hereinafter "Mrs. Deitz"), appeals from an order entered January 12, 2007, by the Circuit Court of Gilmer County. By that order, the circuit court reviewed an order entered June 19, 2006, by the Family Court of Gilmer County whereby the family court found the appellee herein and respondent below, Billy Harrah Deitz (hereinafter "Mr. Deitz"), to be in contempt due to his failure to pay Mrs. Deitz in accordance with the family court's prior orders [1] and ordered Mr. Deitz to pay these sums to Mrs. Deitz within one week or he would face incarceration for six months. The circuit court determined that the family court had correctly held Mr. Deitz in contempt but concluded further that the family court had improperly failed to afford Mr. Deitz an opportunity to purge himself of contempt. On appeal to this Court, Mrs. Deitz contends that the circuit court erred by interfering with the family court's order and by staying the contempt proceedings that were initiated to collect past due alimony contrary to W. Va.Code § 51–2A–12(c) (2001) (Supp.2007). Upon a review of the parties' briefs, the record presented for appellate consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the circuit court's order and remand this case to the family court for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant proceeding began when Mrs. Deitz filed for divorce from Mr. Deitz in 2003 in the Family Court of Gilmer County; in her pleading, Mrs. Deitz averred that the ground for divorce was Mr. Deitz's adultery. Mr. and Mrs. Deitz were married on December 23, 2000, separated on September 17, 2003, and had no children; at the time of these proceedings, Mrs. Deitz was taking nursing classes, and Mr. Deitz was self-employed.[2] By Agreed Temporary Order entered January 20, 2004, Mr. Deitz was ordered to pay (1) $350.00 per month to Mrs. Deitz in temporary spousal support; (2) the monthly car payment and insurance premium for the marital automobile Mrs. Deitz used for transportation to her nursing classes, i.e. a 2002 GMC Yukon;[3] and (3) the monthly installments of the parties' marital credit card debt. It appears that Mr. Deitz made the requisite payments for a period of time then simply stopped payment on all of these obligations.

On August 11, 2005, following hearings in May, 2005, and July, 2005, the family court entered a Final Divorce Decree divorcing the parties and finding, among other things, that Mr. Deitz had violated the court's temporary order by (1) selling a marital asset, namely an oil well drilling service business, for ap-

---

1. During the proceedings involving the parties' divorce, Mr. Deitz assumed responsibility for various marital debts which amount he was ordered to pay to Mrs. Deitz by temporary order of the family court entered January 20, 2004. Thereafter, by final divorce order entered August 11, 2005, the family court awarded Mrs. Deitz lump sum alimony, and ordered Mr. Deitz to pay such alimony to Mrs. Deitz in three equal installments of $15,000 each, due on September 1, 2005; September 1, 2006; and September 1, 2007. The total amount due and owing to Mrs. Deitz at the time of the family court's June 19, 2006, order was approximately $28,102.

2. In its Final Divorce Decree, the family court observed that the parties owned and operated two businesses during their marriage: Billy Deitz Well Service, Inc., and Billy Deitz Wash Service.

3. Mrs. Deitz assumed responsibility for the monthly car payment for this vehicle on August 1, 2005, pursuant to the family court's Final Divorce Decree.

proximately $150,000 of which Mr. Deitz could account for only $50,000;[4] (2) perpetrating a fraud upon the court and depriving Mrs. Deitz of her equitable share of the parties' marital residence;[5] and (3) failing to make the aforementioned payments to Mrs. Deitz and those on her behalf. As a result, the family court concluded that Mr. Deitz was in contempt of its temporary order as a result of his failure to pay these outstanding sums.[6] The family court ordered Mr. Deitz to fulfill these obligations[7] and further awarded Mrs. Deitz alimony in gross of $45,000 in an attempt to equalize the distribution of the parties' marital property. In this regard, the court directed Mr. Deitz to pay the alimony to Mrs. Deitz in three equal installments of $15,000 each, with the payments being due on September 1, 2005, September 1, 2006, and September 1, 2007.[8] Finally, the family court ordered Mr. Deitz to pay the remaining balance on the parties' AIG credit card, the remainder of the Stonewall Jackson Memorial Hospital debt, and Mrs. Deitz's attorney's fees in the amount of $5,000.[9] Mr. Deitz appealed this order to the

---

4. The family court found that "by sale on August 9, 2004, the Respondent [Mr. Deitz] converted the primary asset of the Billy Deitz Well Service, Inc., being the service rig, the 1977 truck and accompanying tools, for One Hundred Fifty Thousand Dollars ($150,000.00)[.]"

5. As to this matter, the family court found

[t]hat with regard to the Parties' property [marital residence] located at 109 Charles Street, Glenville, West Virginia, the situation thereon as reported by the Respondent [Mr. Deitz] smacks of collusion and fraud, and that the same was performed in an effort to perpetrate a fraud upon the Court in this case. The Court, in support thereof finds that said property was described as being purchased on a land contract executed in the year 2000, with payments totaling Twelve Thousand Five Hundred Dollars being made over a four (4) year period (with a Four Hundred Dollars [$400.00] per month payment made as 'rent' and credited toward the interest on said land contract) and then a balloon payment of One Hundred Thousand Dollars ($100,000.00) being due and owing to the Woodford creditors from the Respondent and the Petitioner [Mrs. Deitz]. The Parties allegedly never acquired any proprietary interest in said realty from the aforesaid payments, and the Court cannot say the land contract was fraudulent; however, Petitioner and Respondent received the right to cure the Notice of Default on short notice, under Paragraph XI. thereof, subparagraph A. of the contract, which gave a default date of September 7, 2004, leaving the Petitioner and the Respondent less than thirty (30) days in which to cure such default. The Parties forfeited $50,000.00 of their previous payments over four years. But then, the same Parties (minus the Petitioner) to the defaulted land contract entered into a December 27, 2004 rental agreement for the same realty, for the same Four Hundred Dollar ($400.00) monthly payment, dating back to September, 2004, and ending February, 2005. Of greater significance to the Court is the fact that the Respondent never vacated the premises, as called for under Paragraph XI., subparagraph A. of said contract; and the Respondent, to this day, has made and continues to make valuable improvements to the subject property.

That the Court hereby reserves jurisdiction to the effect and for the purpose that should the Respondent and/or any subsequent spouse ever acquire a proprietary interest in the realty located at 109 Charles Street, Glenville, West Virginia, then the Court will deem the Parties hereto as owners of said real estate, and that the Respondent has acted in collusion and with an intent to defraud this Court, and then the Petitioner will receive a one-half (½) interest in and to said property at that time. West Virginia **Code** § 48–7–103 and § 48–7–104.

6. The specific amount of this outstanding obligation is not apparent from the record.

7. Specifically, the family court ruled

[t]hat with regard to resolution of the Petitioner's [Mrs. Deitz's] Petition for Contempt, the Respondent [Mr. Deitz], on or before August 15, 2005, will forthwith pay to Petitioner a sum equal to all omitted temporary alimony monthly payments to the Petitioner through July, 2005, and all neglected monthly debt installments on the Petitioner's 2002 GMC Yukon through July, 2005, in order for Respondent to purge himself of contempt.

That the Petitioner's Petition for Contempt is found to be with merit and the same is hereby **GRANTED**, in that, the Respondent had the ability to pay the subject payments, and Respondent's failure thereon is found to be intentional, willful and contumacious.

8. The family court also ordered that "should any installment [of the alimony in gross] not be made by the Respondent [Mr. Deitz] unto the Petitioner [Mrs. Deitz] in a timely manner, the same shall accrue interest at the legal rate of Ten Percent (10%) per annum from the due date there on [sic]."

9. The family court ordered Mr. Deitz to pay the $5,000 award of attorney's fees to Mrs. Deitz's counsel "in monthly installments of not less than Two Hundred Fifty Dollars ($250.00) per month, effective August 1, 2005, and continuing on the first (1st) day of each month thereafter until paid; however, if any such payment is not made in a

circuit court, and the circuit court refused his appeal by order entered October 3, 2005. No appeals to this Court were taken from these rulings.

Thereafter, on September 7, 2005, Mrs. Deitz filed a petition for contempt [10] alleging that Mr. Deitz had failed to tender payment of the first installment of her award of alimony in gross and that he also had not yet satisfied his prior obligations to her, including payment of her attorney's fees, temporary alimony, and the other martial debts the family court had ordered him to pay. The family court held a hearing on this matter on February 21, 2006, and, finding Mr. Deitz to be in contempt, entered a Final Order on Petition for Contempt on March 8, 2006, ruling as follows:

the Respondent [Mr. Deitz] has willfully, knowingly, intentionally and contumaciously violated the said August 15, 2005 Final Divorce Decree, entered herein, in that, Respondent has neither paid any of the amounts set forth in the preceding [order], nor any portion thereof;

. . . .

[A]s of the recited date of this Final Order on Petition for Contempt, the Respondent continues to be in contempt of this Court, never having purged himself of contempt set forth in [the Final Divorce Decree relating to amounts ordered to be paid by the Agreed Temporary Order]; however, the Respondent has had an ample opportunity to purge himself of the earlier contempt, and the same, for the purposes of this hearing, demonstrate[s] a pattern or history of contemptuous conduct on the part of the Respondent;

[A]s of the date of this Final Order on Petition for Contempt, the Respondent

owes the Petitioner the sum of Twenty-seven Thousand One Hundred Two Dollars ($27,102.00),[11] as required by the said August 15, 2005 Final Divorce Decree entered herein; and, in addition, the Petitioner should be awarded interest thereon at the legal rate of ten percent (10%) from September 1, 2005 until paid in full[.]

(Footnote added). The family court found further

[t]hat the Respondent [Mr. Deitz] violated the said August 15, 2005 Final Divorce Decree entered herein, in a knowing, willful, intentional and contumacious manner, as shown by[:] a) Respondent's own testimony that he has reduced his monthly expenses; b) and that he has made only one (1) written job application in seven (7) months since the entry of the August 15, 2005 Final Divorce Decree, despite the fact that the Respondent is a skilled worker; and c) that he can make charitable contributions from his Wash Service, yet he cannot satisfy any part of his obligations to the Petitioner or her counsel; and d) that he has entered into a second land contract with a Mrs. Queen; and e) that his Wash Business has a cash aspect; and f) even having five (5) months notice of this Petition and hearing, the Respondent has made no effort to obey the previous August 15, 2005 Final Divorce Decree;

That the Respondent at all times pertinent hereto, did have, and presently has, the ability to pay the aforesaid amounts owed by him to the Petitioner, considering all of the foregoing;

. . . .

That further, the Respondent has the present ability to purge himself of contempt inasmuch as: a) Respondent has not

timely fashion by the Respondent to the Petitioner's attorney, any unpaid portion remaining at that time will accrue interest at the legal rate of Ten Percent (10%) per annum."

10. This pleading was styled "Second Petition for Contempt" because Mrs. Deitz had previously filed a contempt petition with respect to Mr. Deitz's failure to pay the temporary spousal support and other payments in accordance with the family court's January 20, 2004, temporary order.

11. The sum of $27,102.00 presumably includes all the marital debts that Mr. Deitz had not paid, including those the family court ordered him to pay in both its temporary and final orders; the past due monthly installments of Mrs. Deitz's attorney's fees awarded in the Final Divorce Decree; and the $15,000 installment of alimony in gross that was due on September 1, 2005. It is unclear whether this amount also includes the additional $500 attorney's fee award granted to Mrs. Deitz for prevailing upon her Second Petition for Contempt.

reported that he is in default of any major debt; b) Respondent continues to enjoy the apparent rent free occupation of the Wash Service property and the former marital residence at 109 Charles Street in Glenville (both owned by the same Woodford family) ...; and, c) the Court is mindful of its findings in .... the August 15, 2005 Final Divorce Decree regarding Respondent's failure to account for approximately $ 100,000.00 from the proceeds of the unauthorized August 9, 2004 sale of a marital service rig.... As a consequence, the Court believes that the Respondent is currently accessing those unaccounted for funds in order to support his former lifestyle[.]

. . . .

That the Respondent **IS IN DIRECT CIVIL CONTEMPT** of the prior August 15, 2005 Final Divorce Decree of this Court, entered herein, and of which he had full knowledge; and, consequently, Respondent shall have a final opportunity to purge himself of such contempt by payment of the sum of Twenty-seven Thousand One Hundred Two Dollars ($27,102.00) to James Wilson Douglas, the attorney for the Petitioner, on or before March 15, 2006. Should the Respondent fail to make such payment to said attorney James Wilson Douglas, counsel for the Petitioner, by **4:00 p.m. EST, March 15, 2006,** then the Respondent shall forthwith surrender himself to the Sheriff of Gilmer County, West Virginia, and be immediately **incarcerated** in the Central Regional Jail, at Flatwoods, West Virginia, for a period of forty-five (45) days, pending his release therefrom, conditioned upon his fully purging himself of contempt as set forth hereinabove; namely, by the immediate payment unto James Wilson Douglas, counsel for the Petitioner, the sum of Twenty-seven Thousand One Hundred Two Dollars ($27,102.00), as required by the said August 15, 2005 Final Divorce Decree, entered herein, plus interest thereon at the legal rate of ten percent (10%) from September 1, 2005.

Finally, the family court awarded Mrs. Deitz an additional $500 in attorney's fees with respect to her filing and litigation of her Second Petition for Contempt.[12] After this ruling, Mr. Deitz sold his wash service business and paid various of his personal obligations but did not pay any of the sums he owed Mrs. Deitz. Consequently, Mr. Deitz was incarcerated for forty-five days, from March 21, 2006, until May 4, 2006, pursuant to the family court's order.

On May 16, 2006, Mrs. Deitz again filed a petition for contempt against Mr. Deitz.[13] By order entered June 19, 2006, following a hearing held on June 12, 2006, the family court again held Mr. Deitz in contempt and ordered him to satisfy his obligations to Mrs. Deitz by June 19, 2006, or face imprisonment for six months. Specifically, the family court found

[t]hat the Respondent [Mr. Deitz] violated the said August 15, 2005 Final Divorce Decree entered herein, in a knowing, willful, intentional and contumacious manner, as shown by[:] a) that there has been no effort made by the Respondent to comply with said Order since August 15, 2005; b) that even after the fort[y]-five (45) day incarceration in Central Regional Jail for previous contempt charges, the Respondent still refuses to abide by said Order; c) that the Respondent owns firearms and furnishings that have a cash aspect; d) that the Respondent has received in-kind services; e) that the Respondent has received in-kind gifts; f) that the Respondent recently purchased a new truck; g) that the Respondent has disposed of Billy Deitz Wash Service equipment in order to pay other debt; h) that the Respondent has had multiple opportunities to purge himself of said contempt; and i) that the Respondent has access to the unaccounted for proceeds, in the approximate amount of $100,000.00, from the unauthorized August 9, 2004 sale of a marital service rig.

. . . .

That further, the Respondent has the present ability to purge himself of con-

---

12. *See supra* note 11.

13. This pleading was denominated "Third Peti-

tion for Contempt."

tempt inasmuch as: a) Respondent has not reported that he is in default of any major debt; b) Respondent in March, 2006 transferred the Wash Service property lease to a Third Party; that the former marital residence at 109 Charles Street in Glenville (owned by the same Woodford family who owns the Wash Service) is still occupied rent free by the Respondent; c) the Respondent's utilities have been paid by a Third Party, now and during incarceration; d) a down payment of approximately $2,300.00 for Respondent's new truck was paid by a Third Party; and, e) the Court is mindful of its findings in . . . the August 15, 2005 Final Divorce Decree regarding Respondent's failure to account for approximately $100,000.00 from the proceeds of the unauthorized August 9, 2004 sale of a marital service rig. . . . As a consequence, the Court believes that the Respondent is currently accessing those unaccounted for funds in order to support his former lifestyle[.]

. . . .

That the Respondent **IS IN DIRECT CIVIL CONTEMPT** of the prior August 15, 2005 Final Divorce Decree of this Court, entered herein, and the February 21, 2006 Final Order on (Second) Petition for Contempt of which he had full knowledge; and, consequently, Respondent shall have a final opportunity to purge himself of such contempt by payment of the sum of Twenty-eight Thousand One Hundred Two Dollars ($28,102.00)[14] to the Circuit Clerk of Gilmer [County], on or before June 19, 2006. Should the Respondent fail to make such payment to said Circuit Clerk of Gilmer County, by **12:00 p.m. EDST, June 19, 2006,** then the Respondent shall forthwith

surrender himself to the Sheriff of Gilmer County, West Virginia, and be immediately **incarcerated** in the Central Regional Jail, at Flatwoods, West Virginia, for a period not to exceed six (6) months,[15] pending his release therefrom, conditioned upon his fully purging himself of contempt as set forth hereinabove; namely, by the immediate payment unto the Circuit Clerk of Gilmer County, the sum of Twenty-eight Thousand One Hundred Two Dollars ($28,102.00), as required by the said August 15, 2005 Final Divorce Decree, entered herein, plus interest thereon at the legal rate of ten percent (10%) from September 1, 2005.

(Footnotes added). The family court also awarded Mrs. Deitz an additional $500 in attorney's fees for her efforts to bring and prosecute her Third Petition for Contempt.[16]

Immediately after the entry of this order, the Circuit Court of Gilmer County received an ex parte communication regarding the proceedings just had in the family court.[17] In response to this communication, the circuit court, sua sponte, entered an order on June 19, 2006, finding that "the respondent [Mr. Deitz] has recently become employed" and that Mr. Deitz should be afforded an opportunity to obtain counsel, and ruling that the family court's order would be stayed pending further review by the circuit court. Thereafter, on June 29, 2006, the circuit court held a hearing and ruled, in its July 6, 2006, order

A. That a conditional stay of the June 19, 2006 Final Order on Third Petition for Contempt and June 19, 2006 Jail Commitment Order is hereby **GRANTED,** provided that the Respondent [Mr. Deitz] shall:

---

14. The amount of $28,102.00 presumably includes all the marital debts that Mr. Deitz had not paid, including those the family court ordered him to pay in both its temporary and final orders; the past due monthly installments of Mrs. Deitz's attorney's fees awarded in the Final Divorce Decree; the $15,000 installment of alimony in gross that was due on September 1, 2005; and the additional $500 attorney's fee award granted to Mrs. Deitz for prevailing upon her Second Petition for Contempt as well as the additional $500 attorney's fee award to Mrs. Deitz for prevailing upon her Third Petition for Contempt.

15. The family court further charged Mr. Deitz with the cost of his previous forty-five day incarceration at the rate of $48.50 per day, or $2,182.50 for forty-five days.

16. *See* note 14, *supra.*

17. The ex parte communication allegedly was initiated by Mr. Deitz's former counsel who terminated his representation in August, 2004, upon the discovery of a conflict of interest.

1. Pay unto the Clerk of this Court, the sum of $400.00 on or before Friday, June 30, 2006 at 4:00 p.m., and the Clerk of this Court shall then forthwith pay directly or via United States mail, said sum of $400.00 unto the Petitioner [Mrs. Deitz];

2. Pay unto the Clerk of this Court, the sum of $400.00 within twenty-four (24) hours of his payday from his employment, and the Clerk of this Court shall then forthwith pay directly or via United States mail, said sum of $400.00 unto the Petitioner; and,

3. Process a timely statutory appeal of the aforesaid June 19, 2006 Final Order on Third Petition for Contempt and June 19, 2006 Jail Commitment Order, within thirty (30) days of entry.

B. That should the Respondent fail, neglect or refuse to satisfy any of the foregoing conditions of this Stay, then said Stay shall be automatically lifted and vacated, and any law enforcement officer to whom this Order may come, shall **FORTHWITH** apprehend the Respondent and place him in the Central Regional Jail until he has purged himself of contempt by fully complying with the aforesaid June 19, 2006 Final Order on Third Petition for Contempt and June 19, 2006 Jail Commitment Order.

In compliance with this order, Mr. Deitz filed, on July 19, 2006, his appeal from the family court's order and began making $400 payments to the circuit clerk commensurate with his paydays. His payments began on June 30, 2006, and, pursuant to the record in this case, were current through March 19, 2007. As of March 19, 2007, Mr. Deitz had paid Mrs. Deitz, through the circuit clerk, a total of $7,600 of the $28,102 due her. There is no indication that Mr. Deitz paid Mrs. Deitz the second alimony in gross installment of $15,000 that was due on September 1, 2006.[18]

By final order entered January 12, 2007, the circuit court affirmed the family court's order insofar as it held Mr. Deitz to be in contempt of its prior orders as a result of his nonpayment of the monies owed to Mrs. Deitz. However, the circuit court concluded that the family court had not provided Mr. Deitz an opportunity to purge himself of the aforementioned contempt, both because of the limited time the family court accorded to Mr. Deitz to purge his contempt and also because the family court did not specifically "set forth a 'method' by which the contemptor may purge himself of the contempt." The circuit court further questioned the family court's finding that Mr. Deitz had the ability to pay the amounts he owed insofar as the family court did not identify any certain assets from which Mr. Deitz could satisfy his obligations. Accordingly, the circuit court set aside that portion of the family court's order directing the incarceration of Mr. Deitz if he continued in his refusal to make payment and remanded the matter with instructions "that the Family Court enter an order of contempt, allowing the respondent [Mr. Deitz] to purge himself of that contempt by remaining gainfully employed and by making payments of $400.00 per pay period, to the Clerk of this Court, within 24 hours of his receipt of said pay, which sum upon receipt thereof shall be paid by the Clerk to the petitioner [Mrs. Deitz]."[19] From this order of the circuit court entered January 12, 2007, Mrs. Deitz now appeals to this Court.

## II.

### STANDARD OF REVIEW

The essence of the errors assigned by Mrs. Deitz in her appeal to this Court is that the circuit court improperly exercised its jurisdiction over matters of which the family court had already assumed jurisdiction. We previously have held that,

[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and

---

**18.** Nor is it apparent from the record that Mr. Deitz paid Mrs. Deitz the third and final installment of alimony in gross in the amount of $15,000 that was due on September 1, 2007.

**19.** In accordance with the circuit court's instructions, the family court, by order entered February 7, 2007, ruled as it had been directed.

the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

Syl., *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004). Guided by this standard, we turn now to the errors assigned in this case.

## III.

## DISCUSSION

On appeal to this Court, Mrs. Deitz assigns three errors: (1) the circuit court improperly intervened, sua sponte, in proceedings over which the family court had concurrent jurisdiction, with such intervention having been initiated by an ex parte communication with the circuit court; (2) the circuit court erroneously stayed a contempt order enforcing an award of alimony; and (3) the circuit court wrongly limited the family court's authority to impose sanctions for contempt. To facilitate our discussion and decision of this matter, we will consider Mrs. Deitz's assigned errors in two parts: whether the circuit court had jurisdiction to stay the family court's order of contempt and whether the circuit court had jurisdiction to hear an appeal from the family court's order of contempt.

### A. Circuit Court's Jurisdiction to Stay Family Court's Order of Contempt

■ Mrs. Deitz first assigns error to the circuit court's decision to sua sponte stay the family court's order of contempt. It is apparent that the impetus for the circuit court's actions in this regard was the ex parte communication it received regarding the family court's rulings [20] that Mr. Deitz was in contempt of the family court's prior orders and that if Mr. Deitz did not purge himself of such contempt by paying the amounts he owed to Mrs. Deitz and her attorney within one week of the family court's decision, he would be imprisoned for six months.

■ The power of family courts to exercise jurisdiction over various matters is narrowly prescribed by the Legislature. "The jurisdiction of family courts is limited to only those matters specifically authorized by the Legislature, while circuit courts have original and general jurisdiction and other powers as set forth in Article VIII, § 6 of the Constitution of West Virginia." Syl. pt. 5, in part, *Lindsie D.L. v. Richard W.S.,* 214 W.Va. 750, 591 S.E.2d 308 (2003). *Accord* Syl. pt. 2, *State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 584 S.E.2d 548 (2003) (" 'A family court is a court of limited jurisdiction. A family court is a court of record only for the purpose of exercising jurisdiction in the matters for which the jurisdiction of the family court is specifically authorized in this section and in chapter forty-eight [§§ 48–1–101 et seq.] of this code.' W. Va.Code § 51–2A–2(d) (2001), in part.").

■ With respect to the underlying proceeding at issue in the case *sub judice,* however, family courts and circuit courts enjoy concurrent jurisdiction over divorce proceedings. "The circuit courts and family courts of this state, by act of the Legislature, are vested with concurrent jurisdiction over the subject matter of divorce...." W. Va.Code § 48–5–102(b) (2001) (Repl.Vol.2004). Thus, "a family court has the right and authority to adjudicate actions for divorce and the power to carry its judgment and order into execution." W. Va.Code § 48–5–102(b). *Accord* W. Va.Code § 51–2A–2(a)(1) (2001) (Supp. 2007) ("The family court shall exercise jurisdiction over ... [a]ll actions for divorce ....").

■ An integral part of the family court's authority to enter final orders of divorce is its corresponding power to enforce those orders through contempt proceedings. Pursuant to W. Va.Code § 51–2A–9 (2001) (Supp. 2007),

(a) In addition to the powers of contempt established in chapter forty-eight [§§ 48–1–101 et seq.] of this code, a family court judge may:

(1) Sanction persons through civil contempt proceedings when necessary to preserve and enforce the rights of private

---

20. In the order it entered on June 19, 2006, the circuit court specifically noted that "[t]his matter came on for an *ex parte* hearing pursuant [to] the Final Order on Third Petition for Contempt entered on the 19th day of June, 2006, by Larry S. Whited, Family Court Judge for the Family Court of Gilmer County, West Virginia...."

parties or to administer remedies granted by the court;

(2) Regulate all proceedings in a hearing before the family court judge; and

(3) Punish direct contempts that are committed in the presence of the court or that obstruct, disrupt or corrupt the proceedings of the court.

(b) A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant. Sanctions must give the contemnor an opportunity to purge himself or herself. In selecting sanctions, the court must use the least possible power adequate to the end proposed. A person who lacks the present ability to comply with the order of the court may not be confined for a civil contempt. Sanctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order. Ancillary relief may provide for an award of attorney's fees.

*See also* W. Va.Code § 48–1–304 (2001) (Repl.Vol.2004) (setting forth general contempt powers of courts in domestic relations cases); W. Va.Code § 51–2A–2(a)(10) (authorizing family courts to "exercise jurisdiction over ... [a]ll actions brought, including civil contempt proceedings, to enforce an order of spousal ... support....").

■ Despite the authority of family courts to enforce their orders through contempt proceedings, family courts nevertheless remain courts of limited jurisdiction that are inferior to circuit courts. As such, a final order of a family court may be challenged in the circuit court either by a direct appeal to the circuit court or through resort to the circuit court's original jurisdiction.

Pursuant to Article VIII, Sections 6 and 16 of the West Virginia Constitution, W. Va.Code § 51–2–2 (1978), and the Family Court statutes, W. Va.Code §§ 51–2A–1 to 23 (2001), family courts are courts of limited jurisdiction and are inferior to circuit courts. Family courts are, therefore, subject to both the appellate jurisdiction and the original jurisdiction of the circuit courts in this State.

Syl. pt. 4, *State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 584 S.E.2d 548.

■ Alternatively, a party aggrieved by an order of a family court may obtain more immediate relief therefrom by seeking a stay of the family court's ruling pending an appeal therefrom. In this respect, the Legislature has provided very explicit instructions for parties desiring to obtain a stay of a family court's final order:

(a) Any person desiring to file a petition for appeal from a final order of the family court may file a motion for a stay of proceedings to the family court in which the order was entered. The motion for a stay shall be filed with the clerk of the circuit court and served on the respondent in accordance with rule 5 of the rules of civil procedure. The family court may, sua sponte, order a stay of all or part of a final order pending appeal. Subject to the provisions of subsection (c) of this section, the family court may order a stay for the period of time allowed for the filing of a petition for appeal to the circuit court or for any additional period of time pending disposition of the appeal. If the circuit court refuses to consider the petition for appeal, the stay is vacated.

(b) If the family court judge denies a motion for a stay of the proceedings pending appeal, or if the relief afforded is not acceptable, the person desiring to file the petition for appeal may file a motion for a stay of the proceedings to the circuit court. The motion for stay shall be filed with the clerk of the circuit court and served upon the other party in accordance with rule five of the rules of civil procedure. Subject to the provisions of subsection (c) of this section, the circuit court may order a stay for the period of time allowed for the filing of a petition for appeal to the circuit court or for any additional period of time pending disposition of the appeal. If the circuit court refuses to consider the petition for appeal, the stay is vacated.

(c) An order granting a motion for a stay under the provisions of this section may not include a stay of an award for the

payment of spousal support or child support pending the appeal, except that an award of past-due child support may be stayed pending an appeal.

W. Va.Code § 51–2A–12 (2001) (Supp.2007). *See also* W. Va. R. Prac. & Proc. for Fam. Ct. 27 (defining procedure for requesting stay of family court order in language virtually identical to W. Va.Code § 51–2A–12).

Applying these authorities to the facts giving rise to the instant appeal, it is important to note that when the circuit court sua sponte stayed enforcement of the family court's order of contempt, it did so not at the behest of a party aggrieved by said order but, instead, on its own motion. No party had filed a petition for appeal from the family court's June 19, 2006, contempt order nor had any party requested the circuit court to exercise its original jurisdiction to prevent the family court from enforcing its order. Moreover, while W. Va.Code § 51–2A–12(a) permits a family court to sua sponte stay its own order, this section does not accord identical powers to circuit courts. Rather, circuit courts may stay an order entered by a family court only after a motion requesting such relief has been properly filed with the circuit court. Here, no such motion had been filed with the circuit court at the time it sua sponte stayed enforcement of the family court's contempt order. Because no instrument had been filed by any party requesting the circuit court to grant relief from the family court's order of June 19, 2006, the circuit court exceeded its legitimate powers by sua sponte staying the enforcement of the family court's order. Accordingly, we reverse the circuit court's rulings to the contrary.[21]

### B. Circuit Court's Jurisdiction to Hear Appeal from Family Court's Order of Contempt

■ Mrs. Deitz also assigns error to the circuit court's rulings limiting the family court's exercise of jurisdiction over contempt proceedings initiated in the family court. Following the circuit court's stay of the family court's June 19, 2006, order of contempt, Mr. Deitz appealed the family court's order to the circuit court by filing a petition for appeal. By order entered January 12, 2007, the circuit court upheld the family court's finding that Mr. Deitz was in contempt of the family court's prior orders but remanded the case to the family court with directions to impose more lenient sanctions for contempt, including affording Mr. Deitz an opportunity to purge himself of contempt by making bi-monthly payments before imposing a term of confinement.

Although the procedural posture of this case is a bit unusual and the record tends to suggest that Mr. Deitz filed his appeal to the circuit court as a direct result of the circuit court's order conditioning its stay of the family court's contempt order on Mr. Deitz's filing of such an appeal, the appeal was nonetheless proper. Regardless of the impetus for Mr. Deitz's decision to appeal the family court's order of contempt to the circuit court, he had a statutory right to perfect such an appeal and did so within the requisite appeal period. W. Va.Code § 51–2A–11(a) (2001) (Supp.2007) provides that,

> [w]ithin thirty days following the entry of a final order of a family court judge . . . , any party may file a petition for appeal with the circuit court. No appeal may be had under the provisions of this article from any order of a family court judge . . . other than a final order.

*Accord* W. Va. R. Prac. & Proc. for Fam. Ct. 28 (explaining procedure for filing an appeal from a family court's final order). *See* also W. Va. R. Prac. & Proc. for Fam. Ct. 22(c) (directing, in part, that "[a] family court final order shall contain language explicitly informing the parties (1) that it is a final order; (2) that any party aggrieved by the final order may take an appeal either to the circuit

---

21. Because we have determined that the circuit court did not have jurisdiction to stay the family court's order of contempt under the facts and circumstances of this case, we need not consider Mrs. Deitz's corollary argument concerning the propriety of staying an order that includes an award of spousal support. *See* W. Va.Code § 51–2A–12(c) (2001) (Supp.2007) ("An order granting a motion for a stay under the provisions of this section may not include a stay of an award for the payment of spousal support or child support pending the appeal, except that an award of past-due child support may be stayed pending an appeal."). *Accord* W. Va. R. Prac. & Proc. for Fam. Ct. 27(c) (same).

court or directly to the supreme court of appeals; [and] (3) that a petition for appeal to the circuit court may be filed by either party within thirty days after entry of the final order...."). Therefore, the circuit court properly had before it for consideration Mr. Deitz's appeal from the family court's order of contempt.

Finding that the circuit court had jurisdiction to hear Mr. Deitz's appeal from the family court's order of contempt, we must now consider whether the circuit court correctly reviewed the family court's order. When a case is appealed from family court to circuit court,

> (a) [t]he circuit court may refuse to consider the petition for appeal[,] may affirm or reverse the order, may affirm or reverse the order in part or may remand the case with instructions for further hearing before the family court judge.
>
> . . . .
>
> (c) The circuit court shall review the findings of fact made by the family court judge under the clearly erroneous standard and shall review the application of law to the facts under an abuse of discretion standard.

W. Va.Code § 51–2A–14 (2005) (Supp.2007).[22]

■ In its review of the family court's order of contempt, the circuit court affirmed the family court's finding that Mr. Deitz was in contempt of its prior orders. The record evidence is abundant that Mr. Deitz has repeatedly, and contumaciously, refused to obey the family court's orders directing him to pay Mrs. Deitz the monies he owes her. Therefore, we find that the circuit court correctly upheld the family court's ruling of contempt and affirm the circuit court's order in this regard.

■ Having affirmed the contempt ruling, though, the circuit court then concluded that the family court had not afforded Mr. Deitz an ample opportunity to purge himself of contempt. In particular, the circuit court found that the family court had not allowed Mr. Deitz a reasonable period of time within which to pay the amounts he previously had been ordered to pay before ordering that he be incarcerated for his nonpayment. Specifically, the circuit court ruled that

> [t]he family court abused its discretion when it allowed the respondent [Mr. Deitz] a very limited period of time to pay the sum of approximately twenty-seven thousand dollars.... As to the hearing that was held on February 21, 2006, (even if one gives the family court the benefit of the doubt that the period of time should be

---

**22.** W. Va.Code § 51–2A–14(f) (2005) (Supp.2007) goes on to require that

> [t]he circuit court must enter an order ruling on a petition for appeal within sixty days from the last day a reply to the petition for appeal could have been filed. If the circuit court does not enter the order within the sixty-day period or does not, within the sixty-day period, enter an order stating just cause why the order has not been timely entered, the circuit court shall send a written notice to the parties that unless the parties both file an objection within fourteen days of the date of the notice, the appeal will be transferred to the Supreme Court of Appeals as provided in section fifteen [§ 51–2A–15] of this article due to the failure of the circuit court to timely enter an order. The appeal shall be transferred without the necessity of the filing of any petition or further document by the petitioner.

See also W. Va.Code § 51–2A–11(d) (2001) (Supp.2007) (establishing that "[a] respondent shall have fifteen days after the filing of a petition to file a reply to the petition for appeal...."). From the very limited record provided for our consideration on appeal, it does not appear that the circuit court entered its January 12, 2007, order within the requisite time constraints. However, because none of the parties have objected to the order's late entry, we need not address the matter further. See, e.g., Syl. pt. 3, Voelker v. Frederick Bus. Props. Co., 195 W.Va. 246, 465 S.E.2d 246 (1995) (" ' "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, Mowery v. Hitt, 155 W.Va. 103[, 181 S.E.2d 334] (1971).' Syl. pt. 1, Shackleford v. Catlett, 161 W.Va. 568, 244 S.E.2d 327 (1978)."); Syl. pt. 4, Michigan Nat'l Bank v. Mattingly, 158 W.Va. 621, 212 S.E.2d 754 (1975) (" 'This Court will not consider on appeal nonjurisdictional questions which have not been acted upon by the trial court.' Point 1 Syllabus, Western Auto Supply Company v. Dillard, 153 W.Va. 678[, 172 S.E.2d 388 (1970) ].''); Syl. pt. 6, in part, Parker v. Knowlton Constr. Co., Inc., 158 W.Va. 314, 210 S.E.2d 918 (1975) ("[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.").

calculated from February 21, 2006, when the order was not entered until March 10, 2006), the respondent only had 23 days to come up with twenty-seven thousand dollars, and as to the June 12, 2006 hearing, (which order was not entered until June 19, 2006), the respondent was only given seven days to come up with twenty-seven thousand dollars.. Such limited period of time is clearly an abuse of discretion by the family court, under both 48–1–304 and 51–2A–9.

In addition, the respondent was out of jail, as a result of the previous order of incarceration by the family court, approximately 40 days, when the family court ordered his incarceration for a second time, for the failure to pay the same sums. When adding this fact, the limited period of time to purge the contempt is especially egregious.

The family court['s] … order was clearly erroneous in the application of 48–1–304(b) in that the family court failed to even set forth a "method" by which the contemptor may purge himself of the contempt.

The circuit court also questioned the propriety of the family court's finding that Mr. Deitz "had the current ability to pay the twenty-thousand [sic] dollars that was ordered" and concluded that the family court's findings in this regard were "not fact specific as to assets that the respondent [Mr. Deitz] has available to pay the lump sum of twenty-seven thousand dollars[.]" We disagree with the circuit court's assessment of the propriety of the family court's contempt sanctions.

■ When imposing sanctions for contempt, a court must afford the contemnor an opportunity to purge him/herself of the contempt. With respect to the contempt powers of family court judges, W. Va.Code § 51–2A–9(b) directs that "[s]anctions must give the contemnor an opportunity to purge himself or herself." Similarly, W. Va.Code § 48–1–304(b) requires "the court shall afford the contemnor a reasonable time and method whereby he may purge himself of contempt." Neither of these provisions, however, explains the manner in which a court should allow a contemnor to purge him/herself of

contempt but instead rest such a determination in the court's sound discretion.

It appears that the circuit court's main concern with the family court's sanctions is the length of time within which it expected Mr. Deitz to purge himself of contempt by paying the monies he owes to Mrs. Deitz. Although the circuit court found these time periods to be unreasonably short, we believe that, given the history of this case and Mr. Deitz's apparent steadfast resolve to not pay Mrs. Deitz the monies he owes her, the time periods established by the family court were quite reasonable. While the circuit court suggests that these rulings require Mr. Deitz to quickly obtain a sum in excess of twenty-seven thousand dollars in order to satisfy his debts, the circuit court fails to consider the fact that a portion of this debt has been due since before the family court entered its final order of divorce on August 11, 2005. Another · substantial portion of this debt, *i.e.* $15,000, has been due since September 1, 2005, and Mr. Deitz was ordered to pay this specific amount because he, himself, ignored the family court's prior orders, disposed of marital property without authorization, appropriated the proceeds of this sale to his own use, and, when questioned by the family court about this transaction, ·could not account for approximately two-thirds of the total $150,000 proceeds he received by virtue of the sale. This is not a case where the contemnor was blindsided by a court's order to pay or be incarcerated. Here, Mr. Deitz has had ample notice of the nature and amount of his debts, and he has, on numerous occasions, willfully refused to pay them. Under these circumstances, the family court did provide Mr. Deitz an adequate opportunity to purge himself of contempt, and the circuit court abused its discretion by reaching a contrary conclusion.

■ The circuit court also takes issue with the family court's finding that Mr. Deitz has the present ability to satisfy the aforementioned debts. Both W. Va.Code § 51–2A–9(b) and W. Va.Code § 48–1–304(c) prohibit a contemnor's incarceration for contempt due to nonpayment of monies ordered to be paid where he/she "did not pay because he[/she] was financially unable to pay," W.

Va.Code § 48–1–304(c). *Accord Moore v. Hall,* 176 W.Va. 83, 85 n. 2, 341 S.E.2d 703, 705 n. 2 (1986) ("[A] person cannot be found in contempt of court for failure to make court-ordered payments, unless such person had the ability to pay and willfully refused to do so."). The family court found that Mr. Deitz has resources at his disposal from which he could pay Mrs. Deitz the sums he owes her. There is no evidence in the record presented for our consideration on appeal to dispute this finding, and Mr. Deitz, in his argument before this Court, did not indicate that he could not pay the amounts the family court has ordered him to pay. As we previously have observed, "[t]he [contemnor] was free to present any evidence he deemed relevant and was uninhibited in this regard by the lower court." *State ex rel. Zirkle v. Fox,* 203 W.Va. 668, 673, 510 S.E.2d 502, 507 (1998). Because Mr. Deitz did not sustain his burden of proof on this point, and because there is no indication in the record of this case to suggest that Mr. Deitz is not able to pay these amounts, we conclude that the circuit court erred by finding that the family court had failed to consider Mr. Deitz's present ability to pay when, clearly, it had done so. Accordingly, we reverse the circuit court's ruling on this point.

■ Finally, the circuit court questions the propriety of the nature of the sanctions the family court imposed upon Mr. Deitz as a result of his contempt. In its contempt order of June 19, 2006, the family court allowed Mr. Deitz one week to pay Mrs. Deitz the monies he owes her or face incarceration for a period of six months. The circuit court, however, found the sanction of imprisonment to be too harsh and instead directed the family court to enter an order of contempt

> allowing the respondent [Mr. Deitz] to purge himself of that contempt by remaining gainfully employed and by making payments of $400.00 per pay period, to the Clerk of this Court, within 24 hours of his receipt of said pay, which sum upon receipt thereof shall be paid by the Clerk to the petitioner [Mrs. Deitz].

While we appreciate the circuit court's attempts to encourage Mr. Deitz to continue making regular payments to Mrs. Deitz in satisfaction of his obligations to her, we nevertheless find that the circuit court abused its discretion by overturning the sanctions imposed by the family court. W. Va.Code § 48–1–304(b) and W. Va.Code § 51–2A–9(b) both indicate that imprisonment is an appropriate sanction for contempt where the circumstances warrant such a penalty. Furthermore, we typically have afforded broad discretion to lower courts imposing sanctions for contempt to enable those tribunals to fashion a punishment that corresponds with the intransigence of the contemnor. In this regard, we have observed that "the law is ... not to be lightly mocked," and a court may, therefore, "impos[e] whatever legal sanctions it ch[ooses] to compel the [contemnor's] acquiescence to the court's authority." *Donahoe v. Donahoe,* 219 W.Va. 102, 105, 632 S.E.2d 42, 45 (2006) (per curiam). *Accord Armstrong v. Armstrong,* 201 W.Va. 244, 248, 496 S.E.2d 194, 198 (1997) (per curiam) (directing circuit court to determine whether contemnor had ability to pay monies pursuant to divorce decree, and, if he had such ability to pay, further instructing circuit court to hold contemnor "in civil contempt with *an appropriate sanction* until the monies owed under the divorce decree are paid in full" (emphasis added)). Given the broad discretion a court has in deciding what sanctions are most appropriate to punish a contemnor for disobeying the court's orders and considering the willful disobedience Mr. Deitz has displayed for the family court's many orders, we do not believe the family court's sanctions of immediate payment within one week's time or incarceration were too severe. Therefore, we reverse the circuit court's ruling to the contrary and remand this case to the family court for the imposition of sanctions in accordance with its June 19, 2006, order of contempt.

On remand to the family court, we cannot emphasize enough that, when Mrs. Deitz initially pursued contempt sanctions against Mr. Deitz, she undoubtedly had two aims: (1) to receive the monies Mr. Deitz has been ordered to pay her and (2) to punish Mr. Deitz for his recalcitrance. Therefore, we urge the family court to devise a sanction that will ensure Mrs. Deitz's timely receipt of

the monies to which she is entitled and of which Mr. Deitz's payment is long overdue.[23] To this end, the family court should consider Mr. Deitz's current ability to pay to determine whether it would be appropriate to continue Mr. Deitz's current bi-monthly payments of $400, whether the amount of each payment should be increased, or whether another payment arrangement would be more fitting. Moreover, the family court should, consistent with W. Va.Code § 48–1–304(d),[24] award Mrs. Deitz interest on the unpaid installments of the alimony award as to which Mr. Deitz is in arrears. Finally, the family court is directed to hold Mr. Deitz accountable for his dissipation of marital assets and to ensure that Mrs. Deitz receives her equitable share of such property. While we appreciate Mr. Deitz's efforts to date to pay in accordance with the bi-monthly payment plan established by the circuit court, under no circumstances should Mr. Deitz be rewarded for his defiance of the family court's orders.

## IV.

### CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the January 12, 2007, order entered by the Circuit Court of Gilmer County and remand this matter to the Family Court of Gilmer County for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.

---

**23.** It goes without saying that this reference to the monies that Mr. Deitz owes Mrs. Deitz includes any and all awards of attorney's fees included in the family court's prior orders.

**24.** W. Va.Code § 48–1–304(d) (2001) (Repl.Vol. 2004) requires an award of interest on alimony arrearages:

Regardless of whether the court or jury finds the defendant to be in contempt, if the court shall find that a party is in arrears in the payment of alimony . . . or separate maintenance ordered to be paid under the provisions of this chapter, the court shall enter judgment for such arrearage and award interest on such arrearage from the due date of each unpaid installment. Following any hearing wherein the court finds that a party is in arrears in the payment of alimony . . . or separate maintenance, the court may, if sufficient assets exist, require security to ensure the timely payment of future installments.