IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0442

_____

FILED
March 26, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. J. WILLIAM ST CLAIR,
Petitioner

v.

THE HONORABLE GREGORY L. HOWARD, JUDGE OF THE 6th
JUDICIAL CIRCUIT,
THE HONORABLE JARA HOWARD, FAMILY COURT JUDGE OF THE 6th
FAMILY COURT CIRCUIT, and
MOLLY M. P. ST CLAIR,
Respondents

_____

Petition for Writ of Prohibition
The Honorable Gregory L. Howard, Judge
Case No. 18D-532

WRIT DENIED

_____

Submitted: March 2, 2021
Filed: March 26, 2021

Scott D. Maddox, Esq.                    R. Lyne Ranson, Esq.
Maddox Law Office, PLLC                  Lyne Ranson Law Offices, PLLC
Huntington, WV                           Charleston, West Virginia
Counsel for Petitioner

                                         Mike Kelly, Esq.
                                         Mark W. Kelley, Esq.
                                         Ray, Winton & Kelley, PLLC
                                         Charleston, West Virginia
                                         Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Prohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."  Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

i

3.     "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

4.     "A movant seeking relief under Rule 60(b)(4) of the West Virginia Rules of Civil Procedure must show that the judgment sought to be vacated is void and that the motion to vacate the judgment was filed within a reasonable period of time." Syl. Pt. 5, *Leslie Equip. Co. v. Wood Res. Co., L.L.C.,* 224 W.Va. 530, 687 S.E.2d 109 (2009).

5.     "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965).

6.     """*W. Va. Code*, 48-2-33 [1984], requires a full disclosure of one spouse's financial assets to the other spouse at the time of divorce, and contemplates a meaningful hearing on the subject of equitable distribution of property at which the spouse submitting financial data may be cross-examined concerning the nature, origin and amount of assets." Syllabus point 1, *Hamstead v. Hamstead*, 178 W. Va. 23, 357 S.E.2d 216 (1987), *overruled on other grounds*, *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987).' Syl. Pt. 2,

*Metzner v. Metzner*, 191 W. Va. 378, 446 S.E.2d 165 (1994)." Syl. Pt. 1, *Preece v. Preece*, 195 W. Va. 460, 465 S.E.2d 917 (1995).

7. """"Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syllabus Point 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.,* 158 W.Va. 492, 211 S.E.2d 705 (1975).' Syl. Pt. 1, *Hanson v. Bd. of Educ. of the Cnty. of Mineral,* 198 W.Va. 6, 479 S.E.2d 305 (1996)." Syl. Pt. 5, *State ex rel. Dale v. Stucky*, 232 W. Va. 299, 752 S.E.2d 330 (2013).

8. "'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 6, *State ex rel. Biafore v. Tomblin*, 236 W. Va. 528, 782 S.E.2d 223 (2016).

9. A circuit court, having once accepted jurisdiction of an action for divorce pursuant to West Virginia Code § 51-2A-2(b) (Supp. 2020), is not divested of jurisdiction where one or both parties subsequently seek to contest the divorce and/or the property settlement agreement.

10.     "Circuit courts are courts of general jurisdiction and have power to determine all controversies that can possibly be made the subject of civil actions." Syl. Pt. 3, *State ex rel. Silver v. Wilkes*, 213 W. Va. 692, 584 S.E.2d 548 (2003).

11.     "Pursuant to Article VIII, Sections 6 and 16 of the West Virginia Constitution, W.Va. Code § 51–2–2 (1978), and the Family Court statutes, W.Va. Code §§ 51–2A–1 to 23 (2001), family courts are courts of limited jurisdiction and are inferior to circuit courts. Family courts are, therefore, subject to both the appellate jurisdiction and the original jurisdiction of the circuit courts in this State." Syl. Pt. 4, *State ex rel. Silver v. Wilkes*, 213 W. Va. 692, 584 S.E.2d 548 (2003).

12.     Where a circuit court has accepted jurisdiction of a divorce case pursuant to West Virginia Code § 51-2A-2(b) (Supp. 2020) and one or both parties subsequently seek to contest the divorce and/or the property settlement agreement, the court may vacate any prior orders and dismiss the action from its docket; proceed to take testimony and/or evidence necessary to resolve the contested issues; or transfer the case to the family court for resolution of the contested issues. Which of these remedies is elected by the court is a matter within its sound discretion, based on the facts and circumstances of the particular case, and the court's decision will not be disturbed on appeal other than on a finding of abuse of discretion.

**WOOTON, Justice:**

The parties to the underlying divorce proceeding, J. William St Clair ("Husband") and Molly M. P. St Clair ("Wife")[1] were married on January 5, 2012, separated on August 6, 2018, and filed for divorce on September 7, 2018. Together with Husband's petition for divorce and Wife's answer, the parties submitted a signed property settlement agreement and financial statements that were less than skeletal, both containing a written notation that the parties waived the requirement of full financial disclosures. All of these documents were drafted and filed by Husband, an attorney. Because there were no parenting issues[2] and there was a written property settlement agreement signed by both parties, Husband filed the case in the Circuit Court of Cabell County pursuant to West Virginia Code § 51-2A-2(b) (Supp. 2020), which gives concurrent jurisdiction to circuit courts and family courts under these circumstances. On October 1, 2018, without holding a hearing and without giving notice to Wife, the court entered a final divorce order, which had also been drafted and tendered to the court by Husband.

Exactly one year later, on October 1, 2019, Wife filed a Motion to Vacate and Set Aside Final Divorce Order pursuant to Rule 60(b) of the West Virginia Rules of Civil

---

[1] In the order of divorce entered on October 1, 2018, Wife was "restored to her maiden name of Prudenti." However, all pleadings in this case continue to identify her as Molly M. P. St Clair.

[2] The parties have no children together.

1

Procedure. The circuit court held a hearing on the motion on April 20, 2020,[3] and thereafter entered an order on June 12, 2020, granting the motion to vacate in part and transferring the case to family court for resolution of all issues of support and equitable distribution. On June 30, 2020, Husband filed the instant Petition for Writ of Prohibition, challenging both the court's ruling on the motion to vacate and its authority to transfer the case to family court. On September 3, 2020, following review of the parties' briefs and appendix records,[4] this Court issued a rule to show cause. We now deny Husband's Petition for Writ of Prohibition for the reasons set forth in this opinion.

## I. Facts and Procedural Background

The parties were married on January 5, 2012, in Ohio, and shortly thereafter moved to Huntington, West Virginia. During the marriage, Husband earned a living first as a Methodist minister and then as an attorney working for Legal Aid. Significantly, for purposes of this petition for extraordinary relief, Husband also had an interest in several real estate companies, BLT Realty, Wahoowa, and SUVAC, that he claims were derived from or exchanged for his shares in Huntington Realty Corporation, a family-owned business. These interests allegedly generated more than five million dollars in income to Husband during the couple's six-year marriage, although he claims that this income was

---

[3] Pursuant to this Court's *Judicial Emergency Declared*, *Amended Order*, entered April 13, 2020, as a result of the Covid-19 pandemic, the hearing was held remotely.

[4] The parties filed separate appendix records.

not marital property. *See* text *infra*. Wife was a homemaker, having given up her career as a university counselor when she married Husband and moved from Ohio to West Virginia with him.[5] Wife claims that she knew almost nothing about the couple's finances and that Husband "kept me 'out of the loop' substantially on any decisions regarding management of our finances."

At the time Husband and Wife separated, they began discussions as to division of the marital assets. In their respective pleadings the parties give starkly different accounts of this process, with Husband characterizing the interactions as a "negotiation" while Wife characterizes it as a time during which Husband bullied and exerted ceaseless pressure on her, telling her that "if I didn't go along with his proposed separation agreement I needed to remember . . . what [Husband] did to [a previous wife]. She didn't get anything." Wife claims that during this entire period and up until the moment she discovered that the divorce had already been granted, she sent numerous and lengthy emails to Husband pleading for time to "salvage[] our marriage." In this regard, the appendix record submitted by Wife, *see supra* note 4, contains copies of numerous emails exchanged between the parties from August 14, 2018, to October 1, 2018. Suffice it to say that these documents provide ample support for the circuit court's ultimate conclusion, long after the fact, that "[Wife] did not want to divorce."

---

[5] Wife stated in an affidavit that Husband "encouraged me not to work, saying that he wanted me, as he put it, 'to go and do and be.'"

3

What is not disputed, however, is that despite her desire to reconcile, Wife signed all of the documents prepared by Husband, including the property settlement agreement. As part of the settlement, Husband agreed to pay Wife the sum of $205,000.00, which he represented to be far in excess of that to which she was statutorily entitled;[6] further, it was agreed that Wife would retain a 2014 Ford F-150 truck, a joint Wesbanco checking account, and certain household goods, specifically, "the baby grand piano, the butcher block and other items which she acquired prior to marriage." Husband retained the marital residence, a 2016 Mini Cooper, a 1983 Citroen 2CV, a 1967 Ford Ranchero, his 401 accounts with the United Methodist Church and TIAA CREF, his whole life insurance policy, and certain household goods including "the three Alvar prints." The parties also agreed that each would retain "as their sole and separate property," the following:

> [Husband] shall retain as his sole and separate property his shares of stock in BLT Realty, Inc., Wahoowa, Inc., SUVAC, Inc., his membership interest in BLT Clearwater, LLC, his IRA and other account with Vanguard, the children's trust with Raymond James, the 2018 Buick Regal, and his bank accounts with Wells Fargo and Wesbanco[.]

> [Wife] shall retain as her sole and separate property her accounts with USAA and a vehicle which [Husband] intends to buy at auction, such as a Subaru Outback (which [Husband] will pay for with his separate property).

---

[6] It appears to be undisputed that Husband valued the marital estate at approximately $176,104.00; what is hotly disputed is whether that was true.

Significantly, none of these assets – marital or separate – were enumerated, valued, or even mentioned in the parties' financial disclosures, which contained nothing but their names, addresses, birth dates, ages, and phone numbers, followed by the handwritten notation that "[b]oth parties waive formal disclosure of assets and liabilities per separation agreement."[7] Husband does not dispute that he inserted the handwritten notation on Wife's disclosure as well as his own.

Husband filed the divorce papers – Petition, Husband's financial disclosure, Answer, and Wife's financial disclosure – on September 7, 2018. Of note, the Answer contained language "accept[ing] service of the Petition, [and] waiving formal service of process of the pleading[,]" and thus Wife did not receive formal notice of the institution of the divorce proceeding. Thereafter, on October 1, 2018, the circuit court entered its final order, which was prepared by Husband but signed by both Husband and Wife below the following text: "By signing below, both parties acknowledge they have read and

---

[7] In his supplemental disclosures filed during the course of the Rule 60(b) proceedings, *see* text *infra*, the only information Husband provided about the four business entities was the assertion that they "are not marketable, with all shares and units being subject to shareholder/membership agreements[,]" and that "[t]he forced redemption value of [Husband's] interest in all four businesses is $170,000.00." The Vanguard IRA and/or account was valued at $1,298,460.00, the children's trust at $187,050.00, the Buick Regal at $30,000.00, the Wells Fargo account at $20,000.00, and the Wesbanco account at $24,900.00. Husband also provided two pages of his 2018 income tax return that showed a significant gross income; however, approximately 90% of that income was from an unknown source (presumably explained on one or more of the missing pages).

5

understand the terms, import and effect of the foregoing Order. They agree that the Order accurately reflects their agreements. They ask the Court to enter the Order."

Exactly one year later, on October 1, 2019, Wife filed her Motion to Vacate and Set Aside Final Divorce Order, alleging the following facts, among others:[8] that at the time of the parties' separation, she was emotionally and mentally unstable; that Husband, an attorney, prepared her Answer and Financial Statement, and her sole input into the process was to sign the documents; that Husband also prepared and submitted the final divorce order, again without input from Wife or any explanation as to the document's import; that although Wife signed the settlement agreement and had some participation in modifying its terms, she did not know the extent and value of the parties' marital property, having not had access to joint tax returns from 2012-2016 and having been refused access to the 2017 return; that Wife had only recently, through newly retained counsel, obtained limited information concerning the potential value of the marital estate; that contrary to Husband's assertions, some of Husband's business assets were acquired during the marriage; that when Wife attempted to question the fairness of the agreement or the value of the marital estate, Husband stated, "Do you remember what I did to [a former wife] when she fought me? She didn't get anything[,]" after which Husband said that if Wife

---

[8] In light of the circuit court's conclusions of law that Wife failed to establish fraud, coercion, duress, or lack of capacity, which conclusions have not been made the subject of a cross-appeal, we will not belabor the facts alleged in support of those particular allegations.

6

didn't sign the separation agreement by August 30, 2018, he would withdraw the offer; that throughout the period of time between the parties' separation and the entry of the divorce order, Wife sent Husband a number of emails indicating that she did not want a divorce; that Husband's responses were couched in such a way as to make Wife believe that a reconciliation was indeed possible; that during this entire period in which emails were being exchanged, Wife was unaware that Husband had actually gone ahead and filed the divorce papers in circuit court; that Wife was unaware for several weeks the court had entered a final divorce order on October 1, 2018, without a hearing and without any notice to her; and that during a phone conversation on October 13, 2018, Wife asked Husband whether he had filed the divorce papers, to which he responded, "what are you talking about, Molly? We're divorced."

On April 20, 2020, following receipt and review of the parties' respective pleadings, affidavits, and other information including pages of emails from the relevant time period, the circuit court held a hearing on the Rule 60(b) motion. Thereafter, on June 12, 2020, the court issued its order granting the motion in part and transferring the case to family court. The court held that Wife failed to prove she lacked capacity to enter into the settlement agreement or to waive her rights to certain property; that she failed to prove she executed the settlement agreement under duress; and that she failed to prove she was prevented from obtaining financial information after the divorce had been entered. The court did not address the other issues raised by Wife as grounds for vacating that part of its

7

order relating to the division of the parties' property: that the settlement agreement was procured by fraud, misrepresentation, or other misconduct on the part of Husband; that neither fully disclosed their assets and liabilities as required by West Virginia Code § 48-7-201;[9] and that the final divorce order was entered without a hearing. Nonetheless, the court found that Wife was entitled to the relief she sought on the ground that:

> When [Husband] filed the *Petition*, *Separation Agreement*, and *Answer*, and while these documents were pending for consideration before the Court, [Husband] believed that, because [Wife] had executed the divorce documents, and despite her desire to reconcile, [Wife] still ultimately agreed to divorce as long as it was pursuant to the terms in the *Separation Agreement*.
>
> [Husband] either mistook or misunderstood [Wife's] intent.
>
> [Wife's] expressed desire not to proceed with the divorce implicitly included disavowal of the terms set forth in the Separation Agreement. Because [Wife] did not want to divorce, she necessarily did not want to be bound by the *Separation Agreement* that dictated this division of the parties' property upon divorce.
>
> . . . .
>
> [Wife] effectively withdrew her consent to the *Separation Agreement* prior to entry of the *Order*.
>
> Had the Court been aware [Wife] did not agree to the divorce and that she had effectively withdrawn her consent to the *Separation Agreement* when the proposed divorce order was presented, the Court would not have entered the *Order*.
>
> [Wife] is prejudiced by being bound to terms to which she did not agree at the time the *Order* was entered.

---

[9] *See* text *infra*.

8

When it appears from the evidence presented that an order entered as a result of a misunderstanding or mistaken belief operates to unfairly prejudice a party, justifiable cause exists to set the order aside under Rule 60(b)(6). *Cf. Kelly*, 155 W. Va. at 773, 187 S.E.2d at 626.[10]

In this case, for justice to be accomplished, the portion of the Court's *Order* approving and adopting the *Separation Agreement* must be vacated.[11]

(Footnotes added.)

Having concluded that the settlement agreement was a "nullity," and that determination of a fair division of property required the parties to make full disclosures of their respective assets and liabilities pursuant to West Virginia Code §§ 48-7-202, 203 (2015),[12] the circuit court found that "[g]iven these unique facts and circumstances, the case should be heard and considered by the Family Court . . . which is best equipped to determine the equitable distribution of property and spousal support." Accordingly, the court transferred the case to family court.

---

[10] *Kelly v. Belcher*, 155 W. Va. 757, 187 S.E.2d 617 (1972).

[11] In its order, the circuit court specifically ruled against Husband's claims that the doctrine of judicial estoppel precluded Wife from making arguments contrary to the assertions contained in the pleadings. Husband has not filed an assignment of error contesting this ruling, and we therefore do not address it.

[12] See text *infra*.

On June 17, 2020, five days after entry of the circuit court's order, respondent Family Court Judge Jara L. Howard wrote to the parties' counsel, directing them to participate in a final settlement conference prior to which they would verify that they had "negotiated in good faith toward final settlement of the issues in dispute in the above entitled action." On June 30, 2020, Husband filed his petition for a writ of prohibition,

## II.  Standard of Review

This case is before us on a petition for extraordinary relief. We have long held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). Where, as here, we are faced with a challenge to the circuit court's alleged abuse of its legitimate powers in vacating part of a judgment pursuant to Rule 60(b)(6) of the West Virginia Rules of Civil Procedure, we have further explained that,

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or

10

substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

With respect to Husband's intertwined claims that the circuit court had no authority to transfer this case to family court for further proceedings and that the family court had no authority to accept it, we have held that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

## III. Discussion

Initially, we must determine whether Husband is entitled to extraordinary relief in this case, which presents a unique procedural posture. It is beyond serious dispute that the threshold issue presented here, whether the circuit court's grant of relief pursuant to Rule 60(b)(6) should be reversed, is seldom if ever a matter this Court will review on a writ of prohibition. *See, e.g., State ex rel. First State Bank v. Hustead*, 237 W. Va. 219, 224, 786 S.E.3d 479, 484 (2015) ("we are not surprised that the Bank does not cite a single case wherein we granted extraordinary relief to prevent a circuit court from enforcing its

order on a Rule 60(b)(6) motion."). This is because "[a] motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C.P., is addressed to the sound discretion of the court[,]" Syl. Pt. 5, in part, *Toler v. Shelton*, 157 W. Va. 778, 204 S.E.2d 85 (1974), and "'[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where a trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1.' Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syl. Pt. 1, *State ex rel. Ferrell v. McGraw*, 243 W. Va. 76, 842 S.E.2d 445 (2020). In an attempt to circumvent this well-established principle, Husband argues that the court's grant of Rule 60(b)(6) relief in this case was so far beyond the limits of the court's discretion that it falls within factors three and five of the *Hoover* test: "whether the lower tribunal's order is clearly erroneous as a matter of law," and "whether the lower tribunal's order raises new and important problems or issues of law of first impression." *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d at 14-15, Syl. Pt. 4.

It is clear, however, that the secondary issues presented in Husband's petition, whether the circuit court had either statutory or inherent authority to transfer the case to family court and whether the family court had jurisdiction to accept the transfer, fall squarely within the rubric of *Hoover* because "it is claimed that the lower tribunal exceeded its legitimate powers[.]" 199 W. Va. at 13-14, 483 S.E.2d at 13-14, Syl. Pt. 4

12

Notwithstanding that Husband's multi-pronged attack on the circuit court's grant of Rule 60(b)(6) relief can fairly be characterized as an attempt to fit a square peg into a round hole – the round hole of entitlement to extraordinary relief – we find that the issue of the court's authority to transfer the case is ultimately immaterial if it is determined that its basis for doing so in the first instance was a clearly erroneous ruling on Wife's motion to vacate the divorce order. Accordingly, we will address the Rule 60(b) issue at the outset.

### Circuit Court's Grant of Rule 60(b) Motion

As we consider the circuit court's grant of Rule 60(b) relief and the Husband's challenges thereto, it will be recalled that Rule 60(b) "is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits." Syl. Pt. 2, in part, *Fernandez v. Fernandez*, 218 W. Va. 340, 624 S.E.2d 777 (2005); *see also Jordache Enterprises, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 204 W. Va. 465, 472, 513 S.E.2d 692, 699 (1998) (citing Syl. Pt. 6, in part, *Toler*, 157 W. Va. at 778, 204 S.E.2d at 86); *Cruciotti v. McNeel*, 183 W. Va. 424, 430, 396 S.E.2d 191,197 (1990) (citing *Kelly*, 155 W. Va. at 773, 187 S.E.2d at 626).

Husband's first challenge to the circuit court's ruling is his claim that the court erred in granting a Rule 60(b) motion without addressing whether it had been filed within

a reasonable amount of time.  In this regard, it is well-established in our precedents that "[a] movant seeking relief under Rule 60(b)(4) of the West Virginia Rules of Civil Procedure must show that the judgment sought to be vacated is void and that the motion to vacate the judgment was filed within a reasonable period of time."  Syl. Pt. 5, *Leslie Equip. Co. v. Wood Res. Co., L.L.C.,* 224 W.Va. 530, 687 S.E.2d 109 (2009); *see also Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 398, 729 S.E.2d 231, 233 (2012).  Our precedents counsel that this timeliness analysis should be undertaken before any substantive analysis:

> [w]hen a court undertakes to analyze a Rule 60(b) motion based on grounds (1), (2), (3), or (6) of the Rule, it must determine first if the motion has been filed within [one year][13] after the judgment was entered and then determine, under all the circumstances, if it was filed within a reasonable time.

Syl. Pt. 3, in part, *Delapp v. Delapp*, 213 W. Va. 757, 584 S.E.3d 899 (2003) (citing Syl. Pt. 2, *Savas v. Savas,* 181 W.Va. 316, 382 S.E.2d 510 (1989)) (footnote added); *see also White v. Berryman,* 187 W. Va. 323, 331-33, 418 S.E.2d 917, 925-27 (1992) (eight-month delay in filing motion to vacate default judgment was not reasonable where attorney was aware of the judgment almost immediately after its entry); *Corathers v. Facemire*, 185 W. Va. 78, 80, 404 S.E.2d 769, 771 (1991) (twenty-eight year delay in filing motion was not reasonable under any circumstances).

---

[13] In *Delapp*, the Court quoted the *Savas* syllabus point but amended it to reflect that since the time *Savas* was decided, the time limit for a Rule 60(b) motion had been changed from eight months to one year.

However, this Court has never held that the absence of an explicit timeliness analysis by the circuit court mandates reversal, particularly where, as here, the factual findings contained in the court's order clearly evidence its belief that the Wife's Rule 60(b) motion was filed within a reasonable period of time. In addition, although several older federal cases have suggested that the one-year time limit contained in Rule 60(b) of the Federal Rules of Civil Procedure is an "extreme limit," this Court has never so held. *See Patricia H. v. Gregory M.*, No. 15-0461, 2016 WL 3141574, at *3-4 (W. Va. June 3, 2016) (memorandum decision) (where husband had failed to disclose the pendency of a class action back pay claim, family court did not abuse its discretion in re-opening divorce decree entered seven years earlier in order to permit wife to challenge the equitable distribution award). More importantly, however, as noted by the circuit court, Rule 60(b) sets a specific time limit, one year, only on motions brought pursuant to subsections (1), (2), and (3), whereas Wife's motion was decided under subsection (6), which contains no time limit.[14]

Additionally, as set forth in her motion, and apparent on the face of the record, Wife was at a serious disadvantage from the onset of the divorce proceedings to their conclusion, and beyond, inasmuch as Husband, a lawyer, drafted and filed all of the

---

[14] Subsection (1) applies to mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; subsection (2) applies to newly discovered evidence; and subsection (3) applies to fraud, misrepresentation, or other misconduct of an adverse party. Subsection (6), upon which the court relied in this case, is a catchall provision that applies "to any other reason justifying relief from the operation of the judgment." W. Va. R. Civ. P. 60(b).

15

documents,[15] picked the forum,[16] and did not even notify Wife when the divorce was filed or granted. In contrast, Wife, who did not work outside the home during the marriage, was a self-represented litigant who clearly did not want to divorce and believed that Husband was open to the possibility of reconciliation. Further, Wife alleges that she had no idea of the extent of the parties' marital estate, having never had access to tax returns or other information related to Husband's business interests; in fact, when she asked to see the parties' 2017 tax return, Husband specifically refused her request. Only after securing counsel did Wife gain access to any information that would have put her on notice that Husband had possibly misrepresented the size of the marital estate. Finally, Husband remarried on May 24, 2019, which would necessarily have an impact on counsels' determination of how best to proceed in securing relief for their client – and would necessarily have an impact on the time it took to prepare appropriate pleadings.

Taking all of these factors into account, we have no difficulty in concluding that Wife's challenge to the monetary provisions of the settlement agreement, brought pursuant to Rule 60(b) and based on Husband's failure to file financial disclosures which would have, at the least, required further inquiry on the part of the court, was timely. We

---

[15] This Court has held that "[r]egardless of how simple, amicable, and uncontested the divorce may be, the preparation of documents for the opposing party raises the possibility of prejudice and presents the appearance of impropriety." *Walden v. Hoke*, 189 W. Va. 222, 228, 429 S.E.2d 504, 510 (1993).

[16] According to Wife, Husband specifically chose to file in circuit court rather than family court "because circuit judges will sign off."

16

note that this conclusion is consistent with West Virginia Code § 48-7-206(2) (2015), which provides that,

> If any party deliberately or negligently fails to disclose information which is required by this part 2 and in consequence thereof any asset or assets with a fair market value of five hundred dollars or more is omitted from the final distribution of property, *the party aggrieved by the nondisclosure may at any time petition a court of competent jurisdiction* to declare the creation of a constructive trust as to all undisclosed assets, for the benefit of the parties and their minor or dependent children, if any, with the party in whose name the assets are held declared the constructive trustee, such trust to include such terms and conditions as the court may determine. The court shall impose the trust upon a finding of a failure to disclose such assets as required under this part 2.

(Emphasis added.)

Husband's second timeliness argument is that by filing a Rule 60(b) motion, Wife was attempting to disavow a contract – the settlement agreement – and that our precedents require such action to be taken within a reasonable time, based on all attendant facts and circumstances. We may dispose of this argument without extended discussion. First, Wife did not file an action seeking relief from the terms of a contract; rather, she filed a Rule 60(b) motion seeking to vacate and set aside a divorce order on the ground, inter alia, that it had been entered without notice and without a hearing, both mandated by law. *See* text *infra*. Second, the two century-old cases upon which Husband relies, *Hobbs v. Hinton Foundry, Mach. & Plumbing Co.*, 74 W. Va. 443, 82 S.E. 267 (1914) and *Adams v. Adams,* 82 W.Va. 244, 95 S.E. 859 (1918), are wholly inapposite, as both deal with the time limits for disaffirmance of a contract into which an individual entered when he or she

17

was a minor. Further, *Hobbs* cuts against Husband's argument that Wife's retention and beneficial use of the equitable distribution precludes her right to seek relief; in syllabus point 7 of that opinion, the Court held that

> [t]he retention, for three months after full age, of possession of property purchased by an infant, his enjoyment of the beneficial use thereof, payment of part of the consideration therefor, and his offer for sale of part thereof do not preclude right to disaffirm or authorize the inference of an intention to ratify.

*Hobbs*, 74 W. Va. at 444, 82 S.E. at 268. In *Adams*, the Court held that a son who, while still a minor, entered into a contract giving up his right to inherit from his father because his inheritance had been advanced during the father's lifetime, could not disaffirm the contract after his father's death, which occurred seven years after the son reached the age of majority. *Adams*, 82 W. Va. at 245, 95 S.E. at 860. Here, in contrast, the time which elapsed between Wife's discovery of information concerning Husband's financial interests and her filing for Rule 60(b) relief is measured in months, not in years.

In this latter regard, in attempting to characterize the time lapse prior to Wife's filing as unreasonable, Husband claims that she deliberately delayed filing the motion until after she had received the balance of the agreed-upon $205,000.00 equitable distribution.[17] This argument presupposes that Wife had information concerning Husband's business

---

[17] For approximately three months prior to early December, 2018, at which time Wife vacated the marital home and executed a deed, Husband charged her rent to live in the home, deducting these sums from the equitable distribution.

18

interests prior to early December, 2018, when she vacated the marital home and received the money, yet there is not a scintilla of evidence in the record to support even an inference that this was the case. To the contrary, Wife avers in her Motion to Vacate and Set Aside Final Divorce Order that she, "through the undersigned counsel, only recently obtained limited information regarding the *potential* value of the marital estate." (Emphasis in original). Further, in her Affidavit she explained that when she learned that not only had the divorce papers been filed but that the divorce had been granted, she "was neither emotionally nor financially able to challenge [Husband's] decision to pursue the divorce or his refusal to disclose our finances."

The remainder of Husband's attempt to frame this case as a contract dispute is skeletal at best and incomprehensible at worst.[18] The fact is that no amount of judicial legerdemain can transform Wife's Rule 60(b) motion into an action for breach of contract. Additionally, Husband's effort to argue that Wife's alleged "anticipatory breach" was untimely has no more evidentiary support than his parallel claim that her Rule 60(b) motion was untimely.

---

[18] Husband asserts that Wife's filing of a Rule 60(b) motion was "along the lines of an anticipatory breach . . . which does not render the Agreement a nullity." In support of this assertion, Husband cites *Puckett v. United States*, 556 U.S. 129 (2009), where the Supreme Court of the United States held that although the Government's failure to honor one term of a defendant's plea agreement did not render the agreement a nullity, "the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement[.]" *Id*. at 137. It is difficult to discern why Husband considers this case to be helpful to his position.

Husband's third challenge is that the circuit court erred in vacating a portion of the divorce order without requiring Wife "to return the benefits of the Agreement after the set aside." Again, this alleged error requires little discussion. Husband cites not one case in support of such a requirement, relying instead on the argument that "[a]llowing [Wife] to retain the entire benefit of the Agreement and order, while also having an opportunity to request more from [Husband], is not a legal equitable result under the circumstances." The fatal flaw in this argument is that it ignores the anticipated legal proceedings contemplated by the circuit court: whether it is determined that Husband's undisclosed income was his separate property, as he claims, or that some or all of it was marital property, as Wife claims, all issues of equitable distribution and spousal support will be determined de novo by the family court, thus resolving all issues of who-owes-whom. Given the parties' respective financial positions, insofar as this this may be inferred from the tax returns and affidavits contained in the appendix record, it is not at all inequitable to maintain the status quo in the meantime.

Husband's final argument relating to the Rule 60(b) motion is that the circuit court erred in granting only partial relief, i.e., in reversing only that portion of the divorce order which confirmed the terms of the parties' settlement agreement but leaving the divorce decree intact. This is a curious argument for Husband to make, in that such an action by the circuit court, had it been taken, would necessarily have had two results: first,

it would have made Husband's current marriage voidable[19] and exposed him to a possible charge of bigamy, *Harvey v. Harvey*, 171 W. Va. 237, 242, 298 S.E.2d 467, 472 (1982); and second, it would have required the circuit court to dismiss the divorce action[20] and leave the parties to refile it in family court, which is exactly the result that Husband seeks to prohibit. In any event, it is clear from the text of Rule 60(b) that the court's discretion is broad, and that "*upon such terms as are just*, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding[.]" (Emphasis added). It cannot be gainsaid that here, in light of Husband's remarriage, the court's decision was not only just but positively Solomonic: the court granted Wife the only relief that was feasible under the circumstances -- a determination of spousal support and equitable distribution based on full financial disclosures -- since Husband's remarriage had most assuredly ended any possibility of reconciliation between the parties, and vacating the divorce decree would have caused serious harm to an innocent third party. In short, in light of all the facts and circumstances presented in this case, we conclude that the circuit court's vacation of only one part of its order was wholly consistent with the overriding purpose of Rule 60(b), which "must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the

---

[19] *See* W. Va. Code § 48-3-103(1) (2015).

[20] *See* text *infra*, discussing W. Va. Code § 51-2A-2(b).

21

court's conscience that justice be done in light of *all* the facts." *N.C. v. W.R.C.*, 173 W. Va. 434, 437, 317 S.E.2d 793, 796 (1984).

Notwithstanding our rejection of Husband's specific challenges concerning the circuit court's grant of Rule 60(b) relief, we acknowledge that the basis for the court's ruling is less than persuasive: that "[Wife's] expressed desire not to proceed with the divorce implicitly included disavowal of the terms set forth in the *Separation Agreement*. Because [Wife] did not want to divorce, she necessarily did not want to be bound by the *Separation Agreement* that dictated the division of the parties' property upon divorce." However, it is long-established in our precedents that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Noland v. Va. Ins. Reciprocal,* 224 W. Va. 372, 382, 686 S.E.2d 23, 33 (2009) ("In reviewing an appeal of a circuit court's order, we look not to the correctness of the legal ground upon which the circuit court based its order, but rather, to whether the order itself is correct, and we will uphold the judgment if there is another valid legal ground to sustain it.") (citing *Yourtee v. Hubbard*, 196 W. Va. 683, 690 n.9, 474 S.E.2d 613, 620 n.9 (1996)). Thus, whether or not it logically follows that Wife's desire to halt the divorce proceedings is evidence that she no longer agreed to the terms of the

22

settlement agreement, we find that there are four indisputable facts in this case that, taken together, demonstrate beyond doubt that Husband is not entitled to extraordinary relief.

First, the parties did not exchange any financial information, in violation of the unequivocal mandate set forth in syllabus point one of *Preece v. Preece*, 195 W. Va. 460, 465 S.E.2d 9097 (1995):

> "'*W. Va. Code*, 48-2-33 [1984],[21] requires a full disclosure of one spouse's financial assets to the other spouse at the time of divorce, and contemplates a meaningful hearing on the subject of equitable distribution of property at which the spouse submitting financial data may be cross-examined concerning the nature, origin and amount of assets.' Syllabus point 1, *Hamstead v. Hamstead*, 178 W. Va. 23, 357 S.E.2d 216 (1987), *overruled on other grounds*, *Roig v. Roig*, 178 W. Va. 781, 364 S.E.2d 794 (1987)." Syl. Pt. 2, *Metzner v. Metzner*, 191 W. Va. 378, 446 S.E.2d 165 (1994).

(Footnote added); *see also* Syllabus, *Buckler v. Buckler*, 195 W. Va. 705, 466 S.E.2d 556 (1995), and Syl. Pt. 2, *Mitchell v Mitchell*, 205 W. Va. 203, 517 S.E.2d 300 (1999). Further, the existence of a settlement agreement does not excuse the parties from this statutory obligation because only upon full disclosure of financial information can the circuit court

---

[21] Pursuant to Acts 2001, 5th Ex. Sess., c. 5, effective September 19, 2001, this statutory provision is now contained in West Virginia Code § 48-7-201 (2015), which provides in relevant part that "in all divorce actions and in any other action involving child support, all parties shall fully disclose their assets and liabilities within forty days after the service of summons or at such earlier time as ordered by the court." We note that there is no room for debate as to whether the statute applies only to "divorce actions . . . involving child support," as the only issue in *Preece* was the fairness of the parties' property settlement agreement.

23

fulfill its duty "to determine whether the separation agreement was fair and reasonable[.]" *Preece*, 195 W. Va. at 465, 465 S.E.2d at 922; *see also Buckler*, 195 W. Va. at 712, 466 S.E.2d at 563 ("Where no meaningful financial disclosure is made, a determination of the fairness or reasonableness of a settlement agreement is difficult or impossible."). In this regard, the Court in *Preece* specifically held that such a determination by the court "is necessary in all divorce cases involving a separation agreement." *Id.* at 464, 465 S.E.2d at 921.[22]

Second, the circuit court did not hold any hearing, let alone a "meaningful hearing" within the meaning of *Preece*, *Buckler*, and *Mitchell*, before entering the divorce decree. Absent a hearing, the court could not fulfill its mandate under West Virginia Code § 48-7-102(3) (2015) to determine whether "the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed." With the clarity of hindsight, the circuit court tacitly acknowledged that its failure to conduct any inquiry was a mistake: "[h]ad the

---

[22] In *Clay v. Clay*, 182 W. Va. 414, 418, 388 S.E.2d 288, 292 (1989), this Court held that in a case where both parties were represented by competent counsel, nothing in the statutory framework was "intended to force upon a trial court an affirmative duty to question the wisdom of a spouse's apparent satisfaction with the terms of a property settlement agreement[.]" We are not called upon to determine whether *Clay* was limited by, or even overruled by, *Preece*, since the instant case involves an agreement signed by a self-represented litigant.

Court been aware [Wife] did not agree to the divorce and that she had effectively withdrawn her consent to the *Separation Agreement* when the proposed divorce order was presented, the Court would not have entered the Order." With respect to this issue, it is important to note that although the Wife had waived her right to formal service of the divorce petition, she never waived her right to a final hearing. *Cf. Fernandez*, 218 W. Va. at 345, 624 S.E.2d at 782 (where appellant wife had not been provided written notice of final divorce hearing, circuit court abused its discretion in denying relief under Rule 60(b)).

Third, this case should have raised a red flag from the moment it was filed. Husband, the party seeking the divorce and drafting and filing all of the paperwork, *including the paperwork for Wife*, was a licensed attorney. Wife, then a forty-five-year-old woman who had not worked outside the home during the marriage and was not represented by counsel, was waiving spousal support and agreeing to a distribution of property without any disclosure of Husband's assets and liabilities. Thus, although the circuit court was authorized to accept jurisdiction pursuant to West Virginia Code § 51-2A-2(b), *see* text *infra*, under the facts and circumstances presented here it would have been prudent – at the least – for the court to make some inquiry to determine that the terms of the parties' settlement agreement were equitable and that Wife had freely agreed to those terms.

Fourth, the amount in controversy here is substantial: Wife claims that Husband had some five million dollars of undisclosed income during the six years of the

parties' marriage, while Husband claims that any income-producing assets he owns are separate property and neither the assets nor the income therefrom are subject to equitable distribution. Although this Court takes no position on these issues, which are not before us at this interlocutory stage of the proceedings, we concur with the circuit court's assessment that they merit full testimonial and evidentiary exploration.

Taking all of these factors into account, we find that the circuit court's grant of relief to Wife pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure, and vacation, in part, of its order, was well within the broad ambit of the court's discretion and therefore presents no "clear legal error" meriting extraordinary relief. This does not end our inquiry, however, as Husband contends that the court had no authority to transfer the case to family court for further proceedings. We turn to that issue.

**Circuit Court's Transfer of Case to Family Court**

The circuit court originally accepted jurisdiction of this case pursuant to West Virginia Code § 51-2A-2(b), which provides:

> If an action for divorce, annulment, or separate maintenance does not require the establishment of a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child and does not require an award or any payment of child support, the circuit court has concurrent jurisdiction with the family court over the action if, at the time

26

of the filing of the action, the parties also file a written property settlement agreement executed by both parties.[23]

(Footnote added.) However, when the court subsequently concluded that "[e]ffectively, no controlling written property settlement agreement exists in this case," it was confronted with a unique issue: what happens next? The parties suggest several possibilities. The first is that once the court set aside the settlement agreement, it no longer had jurisdiction under the statute and was therefore required to vacate its order and dismiss the case from its docket, which in turn would require the parties to refile the action in family court and begin anew. The second possibility is that the court's ruling did not divest it of jurisdiction because the statute speaks only to the establishment of jurisdiction at the outset based on the existence of a written settlement "at the time of the filing of the action." Having been granted jurisdiction based on the posture of the case at the outset, the court, in continued exercise of that jurisdiction, was thus authorized to proceed in a manner that would best serve the ends of justice: to vacate its prior order and dismiss the case; or to vacate only a portion of its order and conduct further proceedings on the issues of spousal support and equitable distribution; or to vacate only a portion of its order and transfer the matter to family court for resolution of the property issues. In this case, the court took the latter action, which prompted Husband's filing of a petition for writ of prohibition.

---

[23] Pursuant to Rule 9(a) of the Rules of Practice and Procedure for Family Court, a circuit court has discretion as to whether to accept jurisdiction of a case filed pursuant to West Virginia Code § 51-2A-2(b).

We begin by examining the question of whether the court had continuing jurisdiction in the case after determining that Wife had implicitly withdrawn her assent to the settlement agreement. Husband argues that the language of the statute is dispositive, in that the only requirement for a circuit court's exercise of jurisdiction in a divorce case is the filing of a written property settlement agreement, signed by both parties, at the time the action is filed. He further argues that nothing in the statute, and nothing in this Court's precedents, suggest that once jurisdiction is accepted by the circuit court, *see supra* note 23, the court's rulings in the case can operate to divest it of jurisdiction after the fact.

In contrast, Wife argues that allowing the circuit court to continue exercising jurisdiction would be to reward Husband for forum-shopping, which she defines as "us[ing] his superior position as a practicing attorney to ramrod through a divorce Order that violated clearly established law[.]" Although there is some evidence in the record to suggest that Husband's decision to file the case in circuit court was attributable to his belief that "circuit judges will sign off[,]" this does not alter the fact that the court had jurisdiction of the matter pursuant to the clear language of the statute. *See id*. Further, Wife's argument fails to take into account that if in fact the court lost jurisdiction the moment this became a contested case – more than a year after the final divorce order had been granted – then the only action available to the court was to vacate its entire order and dismiss the case, because any order issued by a court without subject matter jurisdiction is void and unenforceable. In this regard, we have held that ""[w]henever it is determined that a court has no

28

jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket." Syllabus Point 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.,* 158 W.Va. 492, 211 S.E.2d 705 (1975).' Syl. Pt. 1, *Hanson v. Bd. of Educ. of the Cnty. of Mineral,* 198 W.Va. 6, 479 S.E.2d 305 (1996)." Syl. Pt. 5, *State ex rel. Dale v. Stucky*, 232 W. Va. 299, 752 S.E.2d 330, 332 (2013).

Reviewing the language of the statute and assessing the parties' respective arguments, we have little trouble in concluding that a circuit court, having once accepted jurisdiction of an action for divorce pursuant to West Virginia Code § 51-2A-2(b) (Supp. 2020), is not divested of jurisdiction where one or both parties subsequently seek to contest the divorce and/or the property settlement agreement. In this regard, we examine the language of the statute, which gives concurrent jurisdiction to circuit courts and family courts in divorce or separate maintenance cases which do not require the establishment of a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child; do not require an award or any payment of child support; and in which "*at the time of the filing of the action*, the parties also file a written property settlement agreement executed by both parties." *Id*. (emphasis added). This language is clear and unambiguous, which is both the beginning and the end of this Court's inquiry because "'[a] provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 6, *State ex rel. Biafore v. Tomblin*, 236 W. Va. 528, 782 S.E.2d 223 (2016). Although it appears evident

29

that the Legislature's intention was to give parties a choice of forum in uncontested divorce cases, nothing in the statute or its correlative rule, Rule 9(a) of the Rules of Practice and Procedure for Family Court, would circumscribe the authority of a circuit court to proceed as it deems appropriate in the event the case, once accepted, develops in a manner which requires additional fact-finding and/or contested adjudication.

We therefore turn to the question of whether the circuit court's choice of remedy, transfer to the family court for further proceedings, was clear error. Husband argues that while circuit courts have both original and appellate jurisdiction over family courts, *see* Syl. Pt. 3, *Allen v. Allen*, 226 W. Va. 384, 701 S.E.2d 106 (2009) and Syl. Pt. 4, *State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 584 S.E.2d 548 (2003), they neither supervise nor control those courts and therefore have no inherent power to transfer cases to them. Husband also contends that while a circuit court has statutory authority to transfer a case to another circuit court for good cause shown, West Virginia Code § 56-9-1 (2020),[24]

---

[24] West Virginia Code § 56-9-1 (2020) provides that:

> A circuit court, or any court of limited jurisdiction established pursuant to the provisions of section 1, article VIII of the Constitution of this state, wherein an action, suit, motion or other civil proceeding is pending, or the judge thereof in vacation, may on the motion of any party, after ten days' notice to the adverse party or his attorney, and for good cause shown, order such action, suit, motion or other civil proceeding to be removed, if pending in a circuit court, to any other circuit court, and if pending in any court of limited jurisdiction hereinbefore mentioned to the circuit court of that county: Provided, That

and authority under Rule 42(b) of the West Virginia Rules of Civil Procedure to order the transfer and consolidation of related cases pending in circuit court or magistrate court,[25] it has no authority under any statute or rule to transfer a case to family court. We are unpersuaded by Husband's attempt to set an arbitrary boundary on the powers and duties of a circuit court; to the contrary, we have held that "circuit courts are courts of general jurisdiction and have power to determine all controversies that can possibly be made the subject of civil actions." *Silver*, 213 W. Va. at 692, 584 S.E.2d at 548, Syl. Pt. 3; *see also Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 756, 591 S.E.2d 308, 314 (2003) ("circuit courts have original and general jurisdiction and other powers as set forth in Article VIII, § 6 of the Constitution of West Virginia.") Further, and of particular significance,

> [p]ursuant to Article VIII, Sections 6 and 16 of the West Virginia Constitution, W.Va. Code § 51–2–2 (1978), and the Family Court statutes, W.Va. Code §§ 51–2A–1 to 23 (2001), family courts are courts of limited jurisdiction and are inferior to circuit courts. Family courts are, therefore, subject to both the appellate jurisdiction and the original jurisdiction of the circuit courts in this State.

---

> the judge of such other circuit court in a case of removal from one circuit to another may decline to hear said cause, if, in his opinion, the demands and requirements of his office render it improper or inconvenient for him to do so.

[25] It suffices here to note that the rule "makes no substantial change in preexisting legal principles relating to consolidation of related suits or actions[,]" *Holland v. Joyce*, 155 W. Va. 535, 541, 185 S.E.2d 505, 510 (1971), and has nothing to do with family court cases.

31

*Silver*, 213 W. Va. at 693, 584 S.E.2d at 549, Syl. Pt. 4.

With these principles in mind, we return to the facts of this case and the choice of remedies available to the circuit court – a court which had become convinced that its earlier order "operate[d] to unfairly prejudice a party," and that "for justice to be accomplished, the portion of the Court's *Order* approving and adopting the *Separation Agreement* must be vacated." Dismissal of the action, thus requiring the parties to file a new action in family court and begin again, was not a viable option under the unique facts and circumstances of this case; because Husband had remarried, dismissal of the case would make his new marriage voidable, possibly expose him to a charge of bigamy, and cause damage and harm to an innocent third party. Taking evidence and determining property and support issues in circuit court was a viable option, but one the court reasonably elected not to exercise in light of its conclusion that "[t]he Family Court is best equipped to determine the equitable distribution of property and spousal support." We believe, and so hold, that where a circuit court has accepted jurisdiction of a divorce case pursuant to West Virginia Code § 51-2A-2(b) (Supp. 2020) and one or both parties subsequently seek to contest the divorce and/or the property settlement agreement, the court may vacate any prior orders and dismiss the action from its docket; proceed to take testimony and/or evidence necessary to resolve the contested issues; or transfer the case to the family court for resolution of the contested issues. Which of these remedies is elected by the court is a matter within its sound discretion, based on the facts and circumstances of the particular

case, and the court's decision will not be disturbed on appeal other than on a finding of abuse of discretion.

In light of the facts and circumstances presented here, all as set forth in the circuit court's factual findings which have not been made the subject of any assignment of error, we find that the court's decision to remand the case to family court was well within its sound discretion and therefore not in excess of its jurisdiction.[26]

## IV. Conclusion

For the foregoing reasons, the Writ of Prohibition prayed for is denied.

Writ Denied.

---

[26] In light of our resolution of this issue, it is unnecessary to consider Husband's claim that the family court had no authority to accept this case on remand.